St. Louis & San Francisco Railroad Company v. W. J. Sizemore
et al.

Decided January 30, 1909.

1.—Jurisdiction—Venue—Foreign Corporation—Connecting Carriers—Statute.

Where suit was against a foreign railroad corporation and a domestic corporation for injuries resulting in the death of a passenger while traveling from a place in another State to a point in Hunt County in this State, and it appeared that they were connecting carriers under the contract of carriage; that both operated trains in this State, the foreign corporation owning no road in this State but running its trains over one owned by a domestic corporation, and having its principal office and agent for the transaction of its business in another county, and that the domestic corporation sued owned a road running through Hunt County, the District Court of the latter county had jurisdiction of the foreign corporation under the Act of March 13, 1905 (Gen. Laws 1905, p. 29).

2.—Corporations—Agents.

When one corporation makes use of another as its instrument through which to perform its business, the principal corporation is really represented by the agents of the sub-corporation.

3.—Railroads—Citation—Service on Agent.

Where a foreign railroad corporation owned no road in this State but operated its trains over the road of a domestic corporation which it practically

operated and controlled under a working agreement which in legal effect made them partners, service of citation upon a conductor of one of such trains within the State was sufficient in a suit against the foreign company under the Act of March 13, 1905 (Gen. Laws 1905, p. 29), though the party served was the conductor of and employed by the domestic company.

**4.—Pleading—Parties—Relationship—Action for Death.**

Where the original petition in an action for injuries resulting in death named W. J. Sizemore as plaintiff, who sued for himself as surviving husband of deceased and for the benefit of others who were stated to be their children, an amended original petition in which the name of W. J. Sizemore appeared only in the style, stating that "the plaintiff in the above entitled cause by leave of the court files this his amended original petition," and alleging the residence of the plaintiff who brings the suit and that of the others for whose benefit it was brought, naming them, and that "plaintiff shows that his wife's name was Ella Sizemore; that they were duly married many years prior to the injury; that at the time of her death she left surviving her plaintiff herein as her surviving husband, and each of the parties whose names appear in the first part of the petition and for whose benefit this suit was brought," was good on demurrer as against objections that it did not name W. J. Sizemore as party plaintiff, or show any relationship of the other plaintiffs to deceased.

**5.—Same—Injuries Resulting in Death.**

Allegations that plaintiff's wife was injured by striking her in the region of the liver, stomach, breast and abdomen, injuring, bruising and lacerating her liver, stomach, abdomen, kidneys and spine and otherwise injuring her internally to such an extent that she died as a result of said injuries, were sufficient as against special exception that they were too general and did not show the extent or character of each injury or how she was injured internally.

**6.—Evidence—Harmless Error.**

The admission of evidence over objection will not be ground for reversal when the same evidence has been previously admitted without objection.

**7.—Same—Opinion of Nonexpert.**

When the witness states the facts upon which he bases his opinion, though a non-expert, his opinion is admissible in evidence.

**8.—Same—Deposition—Corporate Name—Misnomer.**

Objection to the admission of the answers in a deposition, said objection being made by the defendant orally when the deposition was being read, on the ground that said defendant was not named in the petition and no cause of action was alleged against it, in this, that the petition claims against the St. Louis & S. F. Ry. Co., and defendant's corporate name is St. Louis & San Francisco Railroad Company, was not well taken.

**9.—Same—Declarations of Deceased—Cause of Death—Rebuttal.**

Where the defendant introduced evidence in support of its theory that the deceased died from an ailment contracted before the time of the alleged injuries on defendant's train, and that the idea of her being hurt on the train originated with plaintiff after the death, and introduced declarations of the deceased and of the plaintiff himself that deceased was troubled with a disease before the time of the alleged injury without mention of an injury on the train, declarations of the deceased as to her physical condition after the time of the injury and that she was injured on the train at the place alleged in the petition, was admissible for the plaintiff in rebuttal.

**10.—Jurisdiction—Actions Arising under Laws of Foreign State.**

Causes of action arising under the statute of one State may be enforced in the courts of another State where the laws of both States are substantially the same.

**11.—Same—Foreign Laws.**

The statute of Tennessee entitles the husband and children to recover

damages for injuries resulting in the death of the wife and mother; and it is not so dissimilar to the law of this State as will prevent our courts taking jurisdiction of an action therefor and adjudicating the rights of the parties.

### 12.—Limitation—Foreign Statutes.

The remedies as distinguished from the rights of the parties are determined by the law of the forum, and the statutes of limitation are a part of the remedy and not of the law affecting the rights. An exception exists where a statutory liability is sought to be enforced and the statute prescribes the time within which the suit must be brought and extinguishes the cause of action or right of recovery after such time.

### 13.—Death—Right of Child to Recover for Death of Parent.

Where the husband sued for himself and a son for the death of the wife and mother, and there was nothing to show what interest the son had in the life of deceased or how he was injured, a judgment in favor of both was unwarranted. From the testimony of the father that when he started to this State he bought a ticket for his "little boy," injury and interest could not be inferred so as to support the judgment.

Appeal from the District Court of Hunt County. Tried below before Hon. R. L. Porter.

*C. H. Yoakum* and *Templeton, Crosby & Dinsmore*, for appellant.— Foreign corporations can be served with process in this State only when doing business in this State, and such service must be upon an agent who represents the corporation in its business; and Act of March 13, 1905, of the Legislature of the State of Texas (General Laws of Texas, 1905, p. 30) providing for service of a foreign corporation by summoning any train conductor who operates trains for a foreign and a domestic corporation is ineffectual as a means of bringing the foreign corporation within the jurisdiction of a Texas court. Constitution of the United States, art. 1, sec. 8; Peterson v. Chicago, R. I. & P. Ry. Co., 205 U. S., 364; Green v. Chicago, B. & Q. Ry. Co., 205 U. S., 530.

No evidence was admissible to establish a cause of action against appellant because the appellant was not named in the petition, and no cause of action was alleged against appellant in the petition. In the petition plaintiff complains against the "St. Louis & S. F. Ry. Co." The corporate name of appellant is St. Louis & San Francisco Railroad Company.

Under the pleadings and the evidence the cause of action sued upon was governed by the laws of the State of Tennessee and it was barred by the statutes of limitation of the State of Tennessee. Railway Co. v. McCormick, 71 Texas, 660; Railway Co. v. Jackson, 89 Texas, 113; Willis v. Railway, 61 Texas, 432; Railway v. Richards, 68 Texas, 376; De Ham v. Railway, 22 S. W., 249.

*B. Q. Evans,* for appellees.

RAINEY, Chief Justice.—W. J. Sizemore sued the St. Louis Southwestern Railway Company of Texas, the St. Louis Southwestern Railway Company and the St. Louis & San Francisco Railroad Company to recover damages for personal injuries sustained by his wife, which resulted in death, while traveling as a passenger on a train of

the St. Louis & San Francisco Railroad Company, at Memphis, Tennessee, on a ticket entitling her to transportation from Columbus, Georgia, to Commerce, Texas, over the roads named as defendants. The petition alleged that plaintiff sues for the benefit of J. H. Sizemore, G. W. Sizemore, B. F. Sizemore, F. H. Sizemore and Mrs. E. H. Riley, joined by her husband, J. T. Riley. That the St, Louis & San Francisco Railroad Company and the St. Louis Southwestern Railway Company are corporations and are incorporated under the laws of the State of Missouri, and that the St. Louis Southwestern Railway Company of Texas is incorporated under the laws of the State of Texas and has an office and local agent in Greenville, Hunt County, Texas; that each of the defendants has an agent and representative in Hunt County, Texas, and had at the time the original suit was filed and at the time plaintiff's wife was injured; that each of said defendants was a common carrier of passengers for hire and was engaged in operating railway trains and doing business in the State of Texas as a common carrier; that the said St. Louis Southwestern Railway Company of Texas owns and operates a line of railroad from Texarkana, Texas, to Ft. Worth, Texas, running through Hunt County; that the St. Louis Southwestern Railway Company operates its trains from Memphis, Tennessee, to Texarkana, Texas, passing 1,000 feet into the State of Texas to the passenger depot of the St. Louis Southwestern Railway Company of Texas; that the St. Louis & San Francisco Railroad Company was at the time of the injury complained of and at the time of filing the suit and at the time of trial, operating its trains from Arthur City, on Red River, to Paris, Texas, over the lines of railroads supposed to belong to the Paris & Great Northern Railway Company, a distance of fifteen or twenty miles into the State of Texas; that the Paris & Great Northern Railway Company is owned and operated by the St. Louis & San Francisco Railroad Company, a defendant, and was at the time of the matters complained of in the petition, or, if it was not so owned, it is alleged that the Paris & Great Northern Railway Company and appellant were copartners in the business of common carriers; that the two St. Louis Southwestern Railway Companies were partners in the business of common carriers and held themselves out as partners in the business of carriers from Memphis, Tennessee, to Commerce, Texas; that at the time of the injury and at the time of filing the petitions each of the said defendants were represented in Hunt County, Texas, by agents as follows: P. A. Cox, J. P. Reagan, the Texas Midland Railroad and the St. Louis Southwestern Railway Company of Texas, each of whom was engaged in the sale of tickets and making contracts for the transportation of both freight and passengers over each of the roads of the defendants from Columbus, Georgia, to Commerce, Texas; that all of the defendants are copartners as common carriers; that the St. Louis & San Francisco Railroad Company operated its train commanded by its own conductors over the line of the Paris & Great Northern Railroad from Arthur City on Red River, to Paris, Texas, and that the Paris & Great Northern Railroad Company owns no rolling stock and operates no trains over the said railroad.

Judgment was entered against the St. Louis & San Francisco Rail-

road Company only, and as that is the only company appealing we only mention the proceedings that affect it.

The St. Louis & San Francisco Railroad Company filed its plea to the jurisdiction of the court, wherein it is alleged that it is a foreign corporation, that it neither owns nor operates any line of railroad anywhere in the bounds of the State of Texas; that it had no agent or representative in the county of Hunt or State of Texas; that it made no contract in writing connected with plaintiff's cause of action which would confer jurisdiction on the courts of Hunt County; that if a ticket was sold at Columbus, Georgia, as alleged, the agent selling the ticket was the agent of another and not of said defendant, and negativing other matters which might confer jurisdiction. It also, as a part of said plea to the jurisdiction, under oath denied partnership with either of the other defendants. It also alleged that its domicile is in the city of St. Louis and State of Missouri. It is also alleged that all matters stated in the petition which are claimed to have the effect, or might seem to have the effect, of laying venue as against it in the county of Hunt and State of Texas, are untrue and falsely and fraudulently made for the sole purpose of giving jurisdiction. It also alleged that it is not, and has never had in the county of Hunt and State of Texas, any such agent or representative as might under the Act of the Legislature of the State of Texas, approved March 13, 1905, confer jurisdiction upon the courts of Hunt County; and it is also alleged that said Act of the Legislature of Texas of March 13, 1905, is ineffectual to confer jurisdiction because it is in violation of the Constitution of the State of Texas, and is repugnant to subdivision 3, of section 1 of article 1 of the Constitution of the United States of America, which confers upon the Congress of the United States the power to regulate commerce among the several States, and that it is invalid because it would have the effect of imposing a direct and improper impediment and burden upon the pursuit of interstate commerce. And in connection with this plea to the jurisdiction the said St. Louis & San Francisco Railroad Company of Texas filed motion to quash the service of the citation issued in the cause for said defendant and served on P. A. Cox, J. P. Reagan and W. N. Such, which were the citations for said defendant issued and served, and relied on in the suit.

The plea to the jurisdiction was submitted to the court, and after hearing the evidence relating thereto, it was overruled. Complaint is made of this ruling of the court. The facts adduced on the hearing of the plea show that the court did not err in holding that the District Court of Hunt County had jurisdiction of all the defendants in this case. They show that defendants were connecting carriers and plaintiff's wife traveled over each of said roads from Columbus, Georgia, to Commerce, Hunt County, on a ticket entitling her to such passage. That all the defendants operate trains in this State, the St. Louis & Southwestern Railway Company of Texas line running through Hunt County. The St. Louis & San Francisco Railroad Company operates its trains from Arthur City, on the State line, to Paris, Texas, over the road of the Paris & Great Northern Railway Company, a domestic corporation. In its first plea to the jurisdiction the

St. Louis & San Francisco Railroad Company pleaded that it had an agent and representative in Tarrant County, Texas, in the person of M. H. Meeks, and there maintained an office for the transaction of its business. That its principal office was not in Hunt County, but in the County of Tarrant, which plea was sworn to.

Under the Act of the Legislature, 1905, p. 29, we are of the opinion that the District Court of Hunt County properly assumed jurisdiction of this appellant.

Complaint is made of the court in not sustaining the motion of appellant to quash the service of citation, which motion was made in connection with its plea to the jurisdiction. Citation was served by the sheriff of Lamar County, Texas, on W. H. Such, a conductor who operated one of appellant's trains over the Paris & Great Northern road. The contention is that said W. H. Such at the time of service was not operating a train for appellant, but was then a conductor in the employ of the Paris & Great Northern Railway Company. The evidence for the appellant is to the effect that the railroad of appellant extends from St. Louis, Missouri, through Missouri, Arkansas and the Indian Territory to the north bank of Red River at Arthur City. The Paris & Great Northern Railway Company is a Texas corporation and owns the railroad from Red River at Arthur City to Paris, Texas, a distance of about twenty miles. The Paris & Great Northern Railway Company keeps its offices and general officers at Paris, Lamar County, Texas. Some of the officers of appellant are also officers of the Paris & Great Northern Railway Company. The Paris & Great Northern was not built by the Frisco but floated its own bonds and built its own road and was built before the Frisco reached Red River. S. J. Wright, J. C. Gibbons, J. F. McReynolds and H. D. McDonald, all citizens of Paris, Texas, together own twenty-five shares of the capital stock of the Paris & Great Northern Railroad; the remainder of said capital stock, 4,955 shares, is owned by appellant. Prior to 1903, the Paris & Great Northern leased its track to appellant, and said track was operated by appellant. Since 1902 the Paris & Great Northern Railway Company has owned, controlled and operated its road under the directions of and in accordance with a plan prescribed by the Railway Commission of Texas. The cars and trains of appellant run over the Paris & Great Northern Railroad. This is done upon a contract and agreement between said roads, whereby the train and trainmen operating such trains when coming south and crossing Red River become the trains and servants of the Paris & Great Northern Railway Company and remain such until, upon return north, they cross Red River, when they become the trains and servants of appellant. The Paris & Great Northern does not own or operate any locomotives or cars of its own and renders no personal property for taxation. The trainmen operating the trains as aforesaid are paid by appellant, and appellant bills on the Paris & Great Northern for its proportional part of the pay of such trainmen, and the Paris & Great Northern pays it. The Paris & Great Northern pays rent on the mileage basis for the trains which run over its track. All the other employes of the Paris & Great Northern are employed and paid by the Paris & Great Northern. Appellant employs the trainmen. The su-

perintendent of the Paris & Great Northern has the right and the power to discharge the trainmen while they are in Texas, but it does not appear that he has ever discharged any of such men. Cash received at the stations of the Paris & Great Northern for passenger fares and freights goes to the treasurer of the Paris & Great Northern at Paris, and when the passage or shipment is also over other lines of railway such cash is distributed amongst the several carriers. This is done between the Paris & Great Northern and appellant just in the same manner that it is done between the Paris & Great Northern and the Gulf, Colorado & Santa Fe Railway and other railroads. Appellant did in 1904, and has since issued folders or advertisements of its road, in which it gives time-tables and stations for trains from St. Louis to Paris, Texas, and from St. Louis to other points, and said advertisements are headed in capital letters, and said road from St. Louis to Paris, Texas, is referred to as The Frisco System. In the said folder some of the time-tables are marked and show that the railroad from Arthur City to Paris is the Paris & Great Northern. The stockholders of the Paris & Great Northern Railway elect their own officers. The general superintendent, the auditor and the treasurer of the Paris & Great Northern Railway Company are citizens of Paris, Lamar County, Texas, and they have no official connection with appellant. W. H. Such, at the time the citation for appellant was served on him, resided in Monett, Missouri, and was a passenger conductor, and ran as such conductor from Monett, Missouri, to Paris, Texas, and he was, when served in Paris, Texas, in the capacity of a railway passenger conductor, under the circumstances and conditions with respect to operating trains over appellant's road and the Paris & Great Northern Railroad above stated.

S. J. Wright testified in effect that he was a stockholder in the Paris & Great Northern Railway Company and knew a good deal about who the stock of said road belonged to. "Did not understand that the St. Louis & San Francisco Railroad and the Paris & Great Northern Railroad were the same road under the orders of the Commission, but for all practical purposes it is one road. I do not think we own any trains. I believe we use the Frisco trains. We render for taxation all property belonging to the Paris & Great Northern. We do not render any rolling stock for taxation. I am not paid a salary. My services are gratuitous. I think that some of the other officers of the Paris & Great Northern are paid. We have a full quorum of officers, secretary and auditor, and our accounts are kept separate. The cars are not changed at Red River, and the same cars run through to Paris, and the same train crews. The Frisco and Paris & Great Northern were constructed about the same time, and they are practically under the same management. The people who constructed the Paris & Great Northern also constructed the Frisco. I believe that up to five years ago the Frisco managed the whole business. The Paris & Great Northern has an assistant treasurer and a president in St. Louis. I am not sure whether we have a local superintendent here." Under this evidence we are of the opinion that W. H. Such was operating a train for the appellant at the time he was

served with citation in this case. The two roads had a working agreement which in legal effect make them partners, and if it was conceded, which we do not, that W. H. Such was a Paris & Great·Northern conductor at the time of service, he was such a conductor of appellant, on which service of citation could be had as provided by section 2 of the Act of the Legislature, 1905, p. 29.

In Buie v. Chicago, R. I. & Pac. Ry. Co., 95 Texas, 51, Justice Brown says: "The authorities cited fully sustain the proposition that when one corporation makes use of another as its instrument through which to perform its business, the principal corporation is really represented by the agents of the sub-corporation, and its liability is just the same as if the principal corporation had done the business in its own name." The Paris & Great Northern was chartered and built for the purpose of inducing the appellant to go to Paris, and when the connection was made at Red River the Paris & Great Northern Railway Company turned the line over to appellant, who operated it without the Paris & Great Northern exercising any control until the order of the Commission required it to be operated under the plan above stated, and since then the appellant has practically controlled and operated it.

After overruling the plea to the jurisdiction and the motions to quash service of citation, the court proceeded with a jury to try the case on its merits, and rendered judgment against the appellant in favor of W. J. Sizemore for $1,300, and for the benefit of F. H. Sizemore for $1,780, and against the other plaintiffs and in favor of the other two railway companies, defendants, and the St. Louis & San Francisco alone appeals.

The appellant complains of the court in not sustaining its general demurrer to plaintiff's first amended petition, on which the case was tried, because it does not name W. J. Sizemore as party plaintiff, and does not show any relationship of the other plaintiffs to Mrs. Ella Sizemore, or what injury resulted to them by reason of her death that would entitle them to a recovery. The original petition named W. J. Sizemore as plaintiff who sued for himself as surviving husband of Ella Sizemore, and for the benefit of the others, who were stated to be their children. The said amended petition was styled "W. J. Sizemore et al. v. St. Louis & San Francisco Railway Company et al., No. 6346," and alleges: "Now comes the plaintiff in the above-entitled cause, and by leave of the court first had and obtained files this his first amended original petition in lieu of and as a substitute for the original petition filed on the 27th day of September, 1906, and for such amendment says: 1st. That plaintiff who brings this suit resides in Hunt County, Texas, and all those for whom and for whose benefit this suit is brought likewise reside in Hunt County, Texas. The names of the parties for whose benefit this suit is brought are as follows: J. H. Sizemore, B. F. Sizemore, F. H. Sizemore and Mrs. E. H. Riley, joined by her husband, J. T. Riley." In a subsequent paragraph of said amended petition the further allegation is made: "Plaintiff shows that his wife's name was Ella Sizemore; that they were duly and legally married many years prior to the happening of the injury. At the time of her death she left sur-

viving her plaintiff herein, as her surviving husband, and each of the
parties whose names appear in the first part of this petition and for
whose benefit this suit is brought; that her father and mother are long
since dead, and were dead at the time of the happening of the injury
herein complained of; that the parties herein named are the only per-
sons entitled to bring this suit." The name of W. J. Sizemore appears
in no other way in said amended petition. We think the petition
good as against a general demurrer and, as there was no special demur-
rer attacking the petition for the reasons named, the action of the
court will be sustained.

The court did not err in overruling defendant's special exception to
the allegation in plaintiff's petition, as follows: "Striking her (plain-
tiff's wife) in the region of the liver, stomach, breast and abdomen, in-
juring, bruising and lacerating her liver, stomach, abdomen, kidneys
and spine, and otherwise injuring her internally to such an extent that
after her arrival in Hunt County she died as a result of and a direct
cause of said injuries on the 20th day of June, 1906," because "too
general, and does not show the extent or character of each of said in-
juries, and does not show how she was injured internally." It was
alleged that said injuries resulted in death, and we apprehend it would
be difficult to state with accuracy the "character, kind and extent" of
the internal injuries stated. The allegations were sufficient to apprise
the defendant as to the cause from which death resulted.

The tenth, eleventh, twelfth and thirteenth assignments of error
present the same question—that the court erred in admitting the testi-
mony of Mrs. Beulah Sizemore because the appellant was not named
in the petition, and no cause of action was alleged against it. The
testimony of this witness was by deposition, and to the bill of excep-
tions the court appended this qualification: "The deposition had been
on file since the 1st day of February, 1907, some two or three terms
of the court had elapsed and no written motion was made to suppress
the depositions, but the objections were made orally at the time the
plaintiff's counsel were reading them to the jury; that at the time the
depositions were taken the new law required that each question be
read and answered before the succeeding one was read and answered;
besides, the objections were not well taken." The reasons stated by
the court below for overruling the objections to the testimony are
sound and said assignments are not well taken.

Assignments fourteen, fifteen and seventeen raise the same question
as the three preceding assignments above mentioned, and the court
appended to the three bills of exception the same explanation with the
addition: "The same evidence had been admitted prior to that time
without objection." There was no error in the admission of this tes-
timony. When a witness states the facts upon which he bases his opin-
ion, though a non-expert, his opinion is admissible. Gulf, C. & S. F.
Ry. Co. v. Richards, 83 Texas, 203.

Assignments eighteen to twenty-four, and twenty-seven and twenty-
eight raise practically the same point, and relate to the admission of
testimony. Bills of exception were properly reserved. We copy the
eighteenth assignment to show the question raised, viz.: "The court
erred in permitting plaintiff's witness, Mrs. Covington, in her direct

examination to testify and state, over the objection of this defendant, what Mrs. Ella Sizemore said to the witness in the spring of 1906, about what was the matter with her and about her condition. While plaintiff was offering testimony in rebuttal, and certain witnesses for the defendant had testified that Mrs. Ella Sizemore in her lifetime, and [after] she had come to Texas, had stated in the presence of said witnesses that she had some trouble, which the doctor called gall stones, in Georgia before she came to Texas; and after some witnesses had testified that plaintiff himself and his son, Walker Sizemore, had stated in their presence that Mrs. Ella Sizemore in Georgia, before she came to Texas, had had some liver trouble, plaintiff offered to prove by Mrs. Covington what Mrs. Ella Sizemore in the spring of 1906 said to said witness about her health and physical condition. This defendant objected to the said testimony because it was hearsay and self-serving. The court overruled the objections and permitted the witness to testify and say, and she did testify and say that Mrs. Ella Sizemore, the deceased, about the 21st day of May, 1906, told witness that she, the said Mrs. Ella Sizemore, was a well and healthy woman when she came to Texas. This defendant excepted and reserved its bill. The court appended to each of said bills the following explanation: "The defendant's theory of defense as made by the pleadings and evidence up to the time the witness was called upon to testify, was that Mrs. Sizemore was not injured at Memphis as claimed in the petition, but the disease of which she died was cancer, and that the cancer was caused from gall stones, and that she had gall stones before she came to Texas, and that plaintiff, W. J. Sizemore, had originated the idea of her being hurt on the train as an after-thought after her death in order to raise money to pay his debts. On cross-examination of Beulah Sizemore, J. H. Sizemore, Mr. and Mrs. B. F. Sizemore, the defendant attempted to prove by them that she was in bad health in Georgia—had gall stones, etc.—and sought to show by them that she was not injured in Memphis. Likewise, on cross-examination of W. J. Sizemore, attempted to make the same proof. On cross-examination of Dr. Wheeler, the defendant proved by him that during the several times he visited Mrs. Sizemore, which was a short time after she came to Texas, Mr. Sizemore and his daughter were present. That he was not at any time told or never heard of any injury to Mrs. Sizemore. He said: 'I never heard of an injury until after I heard it from Mr. Sizemore after Mrs. Sizemore's death, and did not suspect any injury.' On cross-examination of Dr. Peak, defendant proved by him that when he examined Mrs. Sizemore he did not remember that she gave him any history of any injury; that if she had given him any such history of an injury he believed that he would have remembered it. Neither Mrs. Sizemore, Mr. Sizemore nor any of the family made any such report to him, and he never learned of it until after suit was brought. The defendant proved by Mrs. Flowers that she was an intimate acquaintance of Mrs. Sizemore and visited her three or four times a week during her sickness. She testified that Mrs. Sizemore told her that she did not know for sure what was the matter; that she thought her liver was out of fix, thought that it was caused from gall stones; had spells in Georgia and nearly died, and would have to have a doc-

tor, and in three or four days would get over it; that the doctor told her it was gall stones passing that would cause her to have the spells. She said: 'She told me after she came to Texas; said after she came to Texas she just got sick and seemed to get bilious and had one of these spells. Said she believed it was a gall stone so large it would not pass. I asked her if she didn't reckon she got hurt and strained herself, and she said no, she never had. I named this to her more than once, and the last time she said: "No, I never got hurt. I know it is that same old disease I had back yonder.'" She also testified the first time she ever heard of Mrs. Sizemore getting injured on a train when she was coming to Texas was when somebody told her Mr. Sizemore had sued for the death of his wife. She said that Mrs. Sizemore talked with her about her trip to Texas, and she never said a word about receiving an injury while on the trip to Texas, and while the train was at Memphis; and the testimony of the witness was admitted in rebuttal to the testimony of the defendant, because the same character of testimony had been admitted without objection at the instance of the defendant." This testimony being in rebuttal of evidence offered by defendant, it was properly admitted for that purpose. (Missouri, K. & T. Ry. Co. v. Hawk, 30 Texas Civ. App., 142.)

There was no error in overruling the objections to the evidence complained of in assignments twenty-five and twenty-six, as the evidence was in rebuttal and admitted to impeach the testimony of appellant's witness.

Assignment twenty-nine complains of the charge of the court and submits the following proposition, to wit: "This charge is error because it submits to the jury a material question, viz.: Whether at the time Mrs. Ella Sizemore was injured the train on which she was riding had stopped at the passenger station, without evidence warranting such submission, and when all the evidence showed that the train at the time Mrs. Sizemore was injured had not reached the station at Memphis, Tennessee. The court charged the jury as set out in the above assignment." There was testimony showing that before the train stopped the conductor passed through the train and said: "Memphis the next stop," or "All off for Memphis, Tennessee," and when the train stopped about all of the passengers got up and started out of the train. Mrs. Ella Sizemore was moving slowly along the aisle when the train moved forward very suddenly and then backward very suddenly, when she and other passengers were thrown and Mrs. Sizemore was injured.

The appellant also submits the following proposition under said assignment No. 29, to wit: "It was error for the court to submit to the jury the question as to whether the laws of Tennessee relating to injuries resulting in death are similar to the laws of the State of Texas, because all the evidence introduced upon that question shows that the laws of the State of Tennessee are very unlike the laws of the State of Texas."

Neither of the foregoing propositions show reversible error. The laws of Tennessee relating to this class of cases are not so dissimilar to the laws of this State as will prevent the courts of this State taking jurisdiction of this action and adjudicating the rights of the parties. Causes of action arising under the statute of one State may be

enforced in the courts of another where the laws of both States are substantially the same. (5 Am. & Eng. Ency. Law, p. 127 (1st ed.); Dennick v. Central Ry. Co., 103 U. S., 11; Louisville & N. Ry. Co. v. Shivell's Adm'r, 18 S. W., 944.) The laws of Tennessee as well as Texas entitle a husband and children to recover damages for injuries resulting in the death of the wife and mother. (Chattanooga Electric Ry. Co. v. Johnson, 37 S. W., 558.) The evidence as to both the laws of Tennessee and the stopping of the train at Memphis, Tennessee, warranted the giving of the charge complained of.

The appellant complains of the refusal to give a special charge to the effect that plaintiff's cause of action was barred by the statute of limitation of the State of Tennessee. The evidence shows that plaintiff's wife was injured while traveling on appellant's road in Tennessee in October, 1904, and this action was filed in September, 1906, less than two years after the injury. The question for decision is, whether the law as to limitation of Tennessee or Texas applies to this case. "It is a well-settled rule that the remedies as distinguished from the rights of the parties are determined by the law of the forum, and that the statutes of limitation are a part of the remedy, and not of the law affecting the rights." (Ross v. Kansas City So. Ry. Co., 34 Texas Civ. App., 586; Brunswick Terminal Co. v. National Bank of Baltimore, 99 Fed., 636; Gautier v. Franklin, 1 Texas, 731.) There is an exception to this rule: It "exists where a statutory liability is sought to be enforced, and the statutes prescribe the time within which the suit must be brought and extinguishes the cause of action or right of recovery after such time." (Ross v. Railway Company, *supra,* and authorities there cited.) The exception does not exist in this case. The statute of Tennessee that gives a right of recovery for death occasioned by the wrongful act of another does not extinguish the right of recovery if suit is not commenced within a prescribed time, but the general rule of limitation, which is a remedy, applies, and the rights thereunder are governed by the law of the forum. Therefore the law of this State, which is two years, applies, and this action was not barred. Since the time of the accident until her death Mrs. Ella Sizemore was a resident of Texas and the appellant was an incorporation under the laws of Missouri, and operating trains in both Tennessee and Texas.

Appellant complains of the refusal to give the following special charge, viz.: "J. H. Sizemore, B. F. Sizemore, G. W. Sizemore, F. H. Sizemore, Mrs. Ella Riley and her husband, J. T. Riley, are not, under the pleadings and evidence in this case, entitled to damages against this defendant, the St. Louis & San Francisco Railroad Company, and W. J. Sizemore is not entitled to recover anything for the use and benefit of the said persons or any of them. Therefore you are instructed to return a verdict in favor of this defendant as to the said B. F. Sizemore, J. H. Sizemore, G. W. Sizemore, F. H. Sizemore and Mrs. Ella Riley and her husband, J. T. Riley." F. H. Sizemore was the only one of the parties named in said special charge in whose favor a recovery was had. F. H. Sizemore is named in the petition, but it is not shown what interest, if any, he had in Mrs. Ella Sizemore, or how he was injured by her death. It was shown that W. J.

Sizemore and Ella Sizemore had a son, Foy Sizemore, and if we could presume that Foy and F. H. are the same person, yet there is no proof that Foy was a minor and entitled to recover, unless it could be inferred from the testimony of W. J. Sizemore that when they started to Texas he bought a half ticket for "my little boy." This inference we are not authorized to make in order to support the judgment. We therefore conclude that the evidence on this point is not sufficient to show such an interest as will support the judgment in favor of F. H. Sizemore, and for this reason the judgment will be reversed. (St. Louis, A. & T. Ry. Co. v. Johnston, 78 Texas, 536.)

There are some other assignments not mentioned herein, but they are not of such controlling importance as to require discussion. For the reason mentioned the judgment is reversed and the cause remanded.

*Reversed and remanded.*