GULF, C. & S. F. RY. CO. v. FRANKLIN.

(Court of Civil Appeals of Texas. Dallas.
Feb. 22, 1913. Rehearing Denied March 29, 1913.)

1. CARRIERS (§ 318*)—PASSENGER'S ACTION FOR INJURIES—SUFFICIENCY OF EVIDENCE.

In an action for injuries to a passenger thrown from the car platform by a sudden jerk or jar, evidence held to support a verdict for plaintiff.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. § 318.*]

2. APPEAL AND ERROR (§ 1003*)—REVIEW—QUESTIONS OF FACT.

It is the peculiar province of the jury to pass upon the credibility of witnesses and the weight to be given to their testimony, and where the evidence would have supported a verdict for either party the verdict cannot be disturbed on the ground that the preponderance of the evidence was the other way.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3938–3943; Dec. Dig. § 1003.*]

3. CARRIERS (§ 318*)—PASSENGER'S ACTION FOR INJURIES—SUFFICIENCY OF EVIDENCE.

In an action for injuries to a passenger thrown off the car platform, evidence that there was a low joint at the place of the injury, and that there was a sudden jar or jerk of the train, sufficiently showed that there was a defect in the track to support a verdict for plaintiff.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. § 318.*]

4. CARRIERS (§ 347*)—PASSENGER'S ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In an action for injuries to a passenger thrown off the platform of a car by a sudden jerk or jar, evidence as to his inability to get a seat and as to the danger of riding on the platform held to make a question for the jury as to his negligence in riding on the platform.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1346, 1350–1386, 1388–1397, 1402; Dec. Dig. § 347.*]

5. WITNESSES (§§ 395, 410*)—CORROBORATION OF IMPEACHED WITNESS.

In a passenger's action for injuries, where defendant proved statements by plaintiff, tending to show that his claim was not made in good faith, that he was a malingerer, and that his injuries and sufferings were based on feigned symptoms, made a strong effort to discredit him by showing immoral habits, and introduced a signed statement made by him soon after receiving the injuries and before fully recovering consciousness, evidence offered by plaintiff as to other statements by him as to how he was injured was admissible in rebuttal to corroborate his testimony.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1260, 1284; Dec. Dig. §§ 395, 410.*]

6. RELEASE (§ 58*)—ACTIONS—QUESTIONS FOR JURY.

In an action for personal injuries, evidence held to make a question for the jury as to whether plaintiff was in his right mind at the time he executed a release of his claim against defendant.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 109–114; Dec. Dig. § 58.*]

7. RELEASE (§ 58*)—ACTIONS—QUESTIONS FOR JURY.

In an action for personal injuries, evidence as to plaintiff's knowledge that money left for him by defendant before he fully recovered consciousness was the consideration of a release executed by him, and not merely for incidental expenses, such as doctor's bills, held to make a question for the jury whether he ratified the release when in his right mind.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 109–114; Dec. Dig. § 58.*]

Appeal from District Court, Collin County; J. M. Pearson, Judge.

Action by J. D. Franklin against the Gulf, Colorado & Santa Fé Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Terry, Cavin & Mills, of Galveston, L. C. Clifton, of McKinney, and Lee & Lomax, of Ft. Worth, for appellant. Evans & Carpenter, of Greenville, and Garnett & Hughston, of McKinney, for appellee.

RAINEY, C. J. Appellee brought this suit to recover of appellant damages for personal injuries received by him by being thrown from a passenger train while a passenger thereon. Defendant answered by general denial, pleas of contributory negligence, and a plea setting up that plaintiff had executed a release. A trial resulted in a verdict and judgment for $2,000 in favor of plaintiff, from which defendant appeals.

The first assignment of error complains of the court for refusing to grant a new trial on the ground that the verdict and judgment are contrary to the overwhelming preponderance of the evidence, setting out the evidence wherein it is claimed it preponderates.

[1, 2] Appellee purchased a ticket at Copeville, entitling him to be transported over appellant's railway from Copeville to Dallas and return. He and two companions on the return, about 8 o'clock at night, boarded the train at Dallas, which was an excursion train, found it crowded, and he had to stand on the platform of one of the coaches. Before reaching Copeville on the return he concluded to go on to Farmersville. To use his language: "Ches. Bumpas, I think, at the time we got to Copeville was just inside the car door. Crawley and Spurlock got off at Copeville and that left me on the platform without any one there at that time that I knew. There were three or four parties on the platform at that time, but I did not know who they were. After we had gotten out of Copeville something like five minutes, I suppose, a coach went down it seemed to me in a hole, kind of a jump-off, and when it did that it threw me backwards, and I caught at the facing of the door with my left hand, and did not catch sufficient to hold, and fell out and struck the steps as I went out. I have had considerable experience riding trains before this. This movement of the coach was a very unusual movement. I was standing on the right-hand side going towards Farmersville at the time of the acci-

dent, and this motion of the train jerked my hand loose and threw me backwards, and I went out and caught as I went with my left hand; but I did not catch sufficient to hold, and I went plumb out." By the fall appellee received severe injuries as alleged in his petition, was rendered semi-unconscious, and remained so for five or six days. No one remembered seeing him thrown from the train, but he was afterwards found the next morning by the section crew, who put him on a push car and carried him to Farmersville.

There was testimony tending to show that appellee was under the influence of intoxicating liquors at the time he was hurt, and there was evidence to the contrary. There was ,testimony tending to show that appellee was sitting on the steps of the platform asleep, and there was evidence to the contrary. Appellee testified he fell off on the right-hand side of the train, when it was shown beyond question that he fell on the left side. He made various contradictory statements relating to the transaction, the most of which statements were made at a time when he was in a dazed condition and not responsible for what he said. His testimony was attacked in a number of ways, and was corroborated by a number of witnesses. The jury would have been authorized to have found against him, but they found in his favor, and there was sufficient evidence to support their verdict. As it was the peculiar province of the jury to pass upon the credibility of the witnesses, and the weight to be given to their testimony, under the settled policy of our law we do not feel warranted in disturbing the judgment on the ground that the preponderance of the evidence was the other way.

[3] The second, third, and fourth assignments of error are to the effect that there was no evidence produced by plaintiff to show that there was any defect in the track. There was evidence that there was a low joint at the place of injury, and that there was a sudden jar or jerk of the train, which under the circumstances justified the jury's finding.

[4] The fifth, sixth, seventh, eighth, fifteenth, and sixteenth assignments of error relate to the insufficiency of the evidence to show that appellee could not get a seat, or could have found room in the coach. The proposition is advanced that the undisputed evidence showing he could have gotten inside, and, "such being the case, if he voluntarily took an exposed position on the platform for his own comfort and convenience and exposed himself to danger when he could have remained in a place of safety, he assumed the risk, is guilty of contributory negligence, and was not entitled to recover."

Appellee testified: "The train was crowded, and the coaches all full, that night riding from Dallas. All the seats were full of people, and people were standing in the aisles just as thick as they could be and also out on the platforms between the coaches. There was a crowd on the part of the train where I was. When I boarded the train there at Dallas, I tried to get a seat, but couldn't find a seat and barely any standing room inside the coaches. I was riding on the platform of a coach kind of in the door that leads into a coach, and as well as I remember somewhere about the middle of the train."

John Cane testified: "The train coming back that night was crowded with passengers. The seats were full and people standing in the aisles and on the platforms. * * * I stood up part of the way, and a part of the way I got a seat."

Pinkney Spurlock testified: "The train was crowded from Dallas to Copeville pretty bad that night, to such an extent that we didn't care to stand in there, because it was hot weather. The seats were full and the aisles and platforms full."

M. L. Cane, the conductor, testified: "Passengers on a regular train usually take a seat and stay there, while on excursion trains they shift about. It is my experience and observation of excursion trains that the passengers move about, backwards and forward. No, I did not invite people off the platform because the gates were open; I did it because it was my duty; they were liable to fall off. If there were gates and they were shut, there would be no danger of their falling off. My observation is that passengers on excursion trains are inclined to drift around from one part of the train to another, and to stand on the platforms, especially in hot weather."

There was other testimony of like effect.

Whether or not, under the circumstances, riding on a train platform was negligence, was a question of fact, and not per se negligence. The court by its charge submitted this issue to the jury and it found against the appellant. Being so found, the appellant is precluded thereby.

[5] Assignments 11, 12, and 13 complain of the admission of the testimony of certain witnesses as to appellee's statements to them as to how he got hurt, for the reason they were self-serving, etc. The court approved the bill of exceptions with this explanation: "This bill of exception is allowed with the explanation: That at different times during the trial, and by different witnesses, the defendant undertook to show declarations by plaintiff inconsistent with his testimony on the stand, and permitted plaintiff to offer, without objection, said declarations as to how he came to be hurt, all of which evidence is more fully and in detail shown by the statement of facts." The appellant had prior to the introduction of this testimony shown that appellee had made statements to different parties which tended to show that appellee was not making his claim against

appellant in good faith, was a malingerer, and that his injuries and sufferings were based on feigned symptoms, etc. Numerous statements of appellee immediately after the injury had been introduced without objection. A strong effort was made to discredit appellee by showing his immoral habits, by visiting houses of prostitution, drinking whisky to an excess, feigning injuries based on feigned symptoms, and introduced a signed statement made by him soon after receiving the injury and before he had fully recovered consciousness from the fall. Under these circumstances, we think the testimony was admissible on rebuttal in corroboration of his testimony on the trial. Railway v. Sizemore, 53 Tex. Civ. App. 491, 116 S. W. 403; Railway Co. v. Garber, 108 S. W. 742; Davis v. Davis, 44 Tex. Civ. App. 238, 98 S. W. 198; Railway Co. v. Patterson, 47 S. W. 686; Railway Co. v. Hawks, 30 Tex. Civ. App. 142, 69 S. W. 1037; Railway Co. v. Martin, 26 Tex. Civ. App. 231, 63 S. W. 1089.

[6] The appellee signed a release to appellant a few days after the accident in settlement of damages for the injuries received by him. This was relied on to defeat a recovery by appellee, and appellant urges as error the verdict of the jury as being contrary to the evidence in this particular, and advances the following proposition: "A full and careful consideration of the testimony in this case leads inevitably to the conclusion that plaintiff's claim that he was not himself at the time the settlement was made is purely an afterthought trumped up for the purpose of getting behind the release. The written statement given by him to Mr. Douglass, in which he details practically every fact as to his past life exactly as he testified to it on the stand, and every detail as to what transpired going to Dallas and returning therefrom except those material matters that would have cut off his right to recover, conclusively show that at the time he gave the statement he was in his right mind. His attending physician and the employé of the bank who witnessed the release so considered." The evidence was conflicting on the issue of whether appellee was in his right mind at the time he executed the release. Appellee testified in effect that when he signed the release he did not know what he was doing, and that he learned of it later. Some of the witnesses' testimony tended to corroborate him, while several witnesses for appellant testified that his mind was sound at the time. The release was procured by appellant's claim agent some two or three days after the accident, and there was testimony that his mind was not normal until five or six days thereafter, so it was a question for the jury to determine, and, having determined it in favor of appellee, we do not feel authorized in changing it.

[7] In this connection appellant further urges that if appellee was unconscious when he signed the release, he received the money after he recovered consciousness, and he thereby ratified the settlement and was bound thereby. Plaintiff testified: "After I learned what he was doing, I knew there had been some money left for me by the railroad company; I did not know the circumstances, or for what purpose it was left, but I supposed it was left to pay my board bill. I was told by Mrs. Wilcoxan, or somebody, that some money had been left there for me, or placed to my credit at the bank. I took that money and paid my doctor's bill and board bill, drug bill, and some to the dry goods store. The first time I learned the real meaning of what I was supposed to have done about this money transaction was after I consulted with Mr. Evans, my attorney, which I think was in October, when I got able to go and consult you (meaning Mr. Evans); and at that time most of this money had been spent. I did not have any money then and have had none since. I have not been able to return this money to the railroad company." On cross-examination he said: "It is a fact that I testified yesterday that I did not fully understand the force and effect of the settlement and that the $200 was left for me at Farmersville as a full settlement of my claim. I did not understand what had been done until I talked with my counsel at Greenville. I don't know whether I understand what the $200 was left for right then or not. I talked it over after that with Mr. Evans. I did not understand that the amount, $200, was being offered and was paid to me in full settlement of my claim against the railroad company. I don't remember what Mrs. Wilcoxan said when she first called my attention to the fact that the $200 had been left there for me. She said something to the effect that $200 had been left at the bank. I did not remember what it was for now."

If appellee received money, not understanding that it was in full settlement of his claim, but was only in payment of his expenses for doctor's bills, etc., incident to his injuries, and having spent it all for the purposes stated and having no money to return to appellant, but offers to allow said sum as a credit on his claim for damages against the appellant, when by the verdict a much larger sum was awarded him, we think the question of ratification became a question for the jury, and as the court fairly and correctly submitted the issue to the jury, we conclude there was no error. Railway Co. v. Jowers, 110 S. W. 946; Railway Co. v. Cade, 93 S. W. 124.

The other assignments that we have not discussed have all been considered, and we find no reversible error therein. The charge of the court is lengthy and fairly submits to

the jury every contested issue. The evidence was sufficient to support the verdict, and the judgment is affirmed.

Affirmed.