## CANADIAN PAC. RY. CO. v. JOHNSTON.

(Circuit Court of Appeals, Second Circuit. May 29, 1894.)

### No. 96.

1. MASTER AND SERVANT — FELLOW SERVANTS — RAILWAY CONDUCTOR AND BRAKEMAN.

A railway company, under whose rules the conductor of a freight train has charge and control of the train and of all persons employed on it, and is responsible for its movements, is liable for injuries to a brakeman on such train caused by negligence of the conductor in unexpectedly starting the train. Railway Co. v. Ross, 5 Sup. Ct. 184, 112 U. S. 377, followed. Railroad Co. v. Baugh, 13 Sup. Ct. 914, 149 U. S. 368, distinguished.

**2. Limitation of Actions—Extinguishment of Debt—Operation of Foreign Statute.**

Where, before a statute of limitations of a foreign country has become operative, by way of extinguishment of the debt, as between two citizens or residents of that country, one of them has permanently changed his national domicile and become a citizen of one of the United States, the statute will not become an absolute bar, as an extinguishment, in the courts of such state.

**3. Trial — Province of Court and Jury — Ruling on Motion to Direct Verdict.**

A plea averring that plaintiff's cause of action was extinguished by a foreign statute of limitation was traversed by a replication de injuria, and issue was joined to the country. There was no conflict in the evidence as to the statute, and defendant, on the ground, among others, that on that evidence it was not liable, moved for the direction of a verdict in its favor. *Held,* that it was not error for the court, ruling on the legal effect of the undisputed evidence, and holding the statute not applicable, to overrule the motion.

In Error to the Circuit Court of the United States for the District of Vermont.

This was an action by William Johnston against the Canadian Pacific Railway Company for personal injuries. A demurrer to defendant's plea was sustained (50 Fed. 886), and the plea was amended, and issue joined on replication to the amended plea. On trial, a motion to direct a verdict for defendant was overruled, and the jury found a verdict for plaintiff, and judgment for plaintiff was entered therein. Defendant brought error.

Frank E. Alfred and Joel C. Baker, for plaintiff in error.

Henry Ballard, Gilbert A. Davis, and A. K. Brown, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. William Johnston, the defendant in error (hereinafter called the plaintiff), brought an action at law in the circuit court of the United States for the district of Vermont against the Canadian Pacific Railway Company, plaintiff in error (hereinafter called the defendant), to recover damages for injuries which he had received while in its employ, and, as he alleged, through its negligence. He recovered a verdict for $8,125. The facts in the case, as they appear in the bill of exceptions, are as follows:

The defendant is, and was at the time of the injury to the plaintiff, a corporation duly organized under the laws of the dominion of Canada, and having its place of business in said Canada, and at the time of the injury to the plaintiff was operating a railroad in Canada, which extended to, and ran into, the state of Vermont. The conductor and trainmen, and the plaintiff, who were running the train upon which the plaintiff was employed at the time he received said injury, were in the employ of the defendant. The plaintiff was employed by the defendant at Farnham, in Canada, about January 1, 1890. He worked a short time in the railroad yard in Farnham under said employment, and then went to work as a brakeman on freight trains, and remained in that service, continuously, up to the time of the injury for which the action was brought. At about half

past 10 o'clock in the forenoon of September 6, 1890, the train upon which the plaintiff was employed as a brakeman left Newport, Vt., for Montreal. It consisted of an engine, tender, 18 freight cars, and a van, having a platform, with roof projecting over it, and a brake. Four or five of the freight cars were loaded, and the remainder of said cars were empty. Samuel Gillander was the conductor of said train, and Arthur Pinney was the forward brakeman, and the plaintiff the rear brakeman. Said conductor, said two brakemen, an engineer, and a fireman constituted the entire crew or force of employes upon said train, and the conductor had full control of all the men on the train. At Sutton Junction, in Canada, the plaintiff fell or was thrown from the top of the rear end of the rear freight car of the train, between the tracks, and was run over or upon by the van, and was badly injured. The testimony on the part of the plaintiff tended to show that before reaching Sutton Junction, and while the train was about to commence the descent of a grade down to that station, the plaintiff left the van, where he had been riding, to go to his place on the top of cars; the conductor told him that certain cars were to be set out at Sutton Junction, and where to cut them off, or pull the pin; that the cars to be set out were pretty near together, and would not require much shunting to set them off upon the side track; that the plaintiff forgot where he was to pull the pin to set out the cars, and went to the rear end of the last freight car, and asked the conductor, who stood on the front platform of the van, if a tall car in the train was to be set out; that in reply to that question of the plaintiff the conductor told the plaintiff to go and get the number of the car; that thereupon the plaintiff went forward, and looked down between the cars, and read the number, and immediately went back over the two intervening cars to tell the conductor the number of the car; that when he got within four or five feet of the rear end of the last freight car, which had no brake at that end, the train started up, without any warning to him, and went forward five or six feet, with a quick snap, and the plaintiff could not reach the van, which had been detached, nor otherwise save himself, and was by the jerk of the train thrown off, and fell upon the track in front of the van, which was slowly following the train; that the van struck the plaintiff, and ran partly over him, and he received the injuries for which he claims to recover in this action. The evidence of the plaintiff tended to show that Gillander, the conductor, as the rear of the train approached the station, pulled the pin connecting the van to the rear end of the last freight car, and applied the brake upon the van; that at the time he pulled the pin he signaled to the engineer to go ahead, without notifying the plaintiff, as he had always done before; and that it was the starting of the train in obedience to the signal of the conductor, given without notice to the plaintiff, when going to give the conductor the number of the car, in obedience to the orders of the conductor, that threw the plaintiff from the train. The evidence of the plaintiff further tended to show that at the time the van was detached the plaintiff was on the top of the freight cars, and entirely out of the sight of the conductor, and that he did not know the van was detached, or that the conductor had

given any signal to go ahead, until the train started, by which he was thrown off, and that the conductor gave him no notice or warning that he was going to detach the van, or start up the train. The evidence of the plaintiff further tended to show that his place, as rear brakeman, at the time of said accident, was at the front end of the rear car, and that he was away from his position only for the purpose of going back to the rear end of the car, to tell the conductor the number of the car he had directed him to get. The plaintiff also put in evidence several of the rules of the defendant for the running of its trains, one of which read as follows:

"(92) While on the road, the conductor will have charge and control of the train and all persons employed on it, and is responsible for its movements; but when the directions of the conductor conflict with these regulations, and involve any risk or hazard, the engineer, and all who participate, will be held equally responsible."

There was no other evidence tending to show any facts of negligence of the defendant or its employes which were in any manner connected with the injuries to the plaintiff.

The evidence of the defendant tended to show that before the plaintiff left the van, at the top of the grade, as the train approached Sutton Junction, the conductor, Gillander, gave the plaintiff a written list of the number of the cars to be set from the train upon the side track, and that there was no further communication between Gillander and the plaintiff until after the injury, except what Gillander said to him when he detached the van; that Gillander supposed that the plaintiff went directly to his place on the train when he left the van; that after the van was detached it was the duty of the plaintiff, as rear brakeman, to detach the cars to be set out; that, as the rear of the train approached the station, Gillander pulled the pin which detached the van from the rest of the train, and said "All right" to the plaintiff, whom he supposed was on the front end of the next car to the van; that the plaintiff was in fact standing near the rear end of said car, facing towards the engine; that as the van was detached the plaintiff signaled the engineer to go ahead, and that the train started forward in obedience to the signal of the plaintiff; and that the plaintiff fell or was thrown off as the train started.

The plaintiff testified that he was 26 years of age, and an unmarried man; that his father was dead, and his mother lived at White River Junction, Vt.; that in 1887 he went into the employ of the defendant, in Canada, and worked as a brakeman there for three days; that in 1888 he again went to work for defendant, in Canada, and worked two months, and commenced work again for the defendant in January, 1890, and worked until the accident, September 6, 1890; that, in the intervals of working for the defendant, he had worked upon a farm some, and in a foundry; that after the accident he remained at Sutton Junction until April, A. D. 1891, when he went to his mother's house, at White River Junction, where he had ever since remained; that he called it his home at his mother's house, and had no other.

This suit was commenced by a writ dated November 6, 1891. Upon the issue made by defendant's plea that the plaintiff's cause of action was extinguished by the law of Canada, the evidence of the defendant, given by the testimony of witnesses learned and of experience in that law, tended to show that the law of Canada was as specified in articles 2262 and 2267 of the Code of Canada:

"Art. 2262. The following actions are prescribed in one year: For slander or libel, reckoned from the day it came to the knowledge of the party aggrieved. For bodily injuries, saving the special provisions contained in article 1056, and cases regulated by special laws."

"Art. 2267. In all cases mentioned in articles 2250, 2260, 2261 and 2262, the debt is absolutely extinguished and no action can be maintained after the delay for prescription has expired."

The testimony of defendant likewise tended to show that, by the law of Canada, article 1056 had no reference to the facts of this case, and that the claim of the plaintiff was not regulated by any special laws, and that, by said law of Canada, claims for bodily injuries are extinguished after the lapse of one year from and after the time when the plaintiff receives the injuries, but that the prescription is interrupted by any acknowledgment which the possessor or the debtor makes of the right of the person against whom the prescription runs, and a debt or claim may be revived after the prescription has run, by acknowledgment, without any new consideration.

At the close of all the evidence, the defendant moved the court to direct a verdict for the defendant, because there was no evidence of negligence on the part of the defendant; also, because Gillander, the said conductor, and the plaintiff, at the time of the alleged injury to the plaintiff, were engaged in the same service and employment, and were fellow servants, and the defendant was not liable in law for any injury resulting to the plaintiff from the negligence of Gillander; and also that from all the evidence received, relating to the issue made upon the defendant's pleas as to the law of Canada, the defendant was not liable in this action. The court overruled said motion to direct a verdict, and submitted said cause to the jury. The court held that said law of Canada was a statute of limitation, and did not apply to this action here, and was immaterial, and that no question arose thereon for the consideration of the jury. The defendant excepted to the refusal of the court to direct a verdict for the defendant, and to the submission to the jury, and to the holding of the court as to the law of Canada. The defendant seasonably excepted to the rule of liability laid down in the charge, for the several reasons set forth in its motion for a verdict.

There was no suggestion upon the trial of incompetence on the part of the conductor. Although the question of his negligence was in dispute before the jury, it was substantially conceded upon the argument before this court that, as between the brakeman and himself, he was negligent, in too hastily detaching the van from the residue of the train, and signaling to the engineer to go ahead, before he was aware that the brakeman had returned, and was in his usual place of safety. There was no negligence in the order to ob-

tain the number of the tall car. That was given to remedy the brakeman's forgetfulness of the details of a previous order. The conductor was not, therefore, responsible for the fact that the brakeman happened to be in a place of danger. If the engineer had suddenly, and without authority, started the train, the conductor would not have been blameworthy. His negligence consisted in causing the train to be put in motion before he was aware that the brakeman had regained a place of safety. His hasty action caused the accident.

The jury having found in the affirmative upon the question of negligence, two questions of law arise upon the record: First. Is the defendant liable for the consequences resulting to the plaintiff, a brakeman upon the freight train, from the negligence of the competent conductor upon the same train, in a matter in which he was acting as conductor? Second. Was the cause of action extinguished before suit was brought, by the operation of the Canadian statute?

The decision of the first question depends, in this court, entirely upon the fact that the circumstances of this case correspond with, and do not differ from, those which controlled the decision of the supreme court in Railroad Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, and are within the narrow scope to which the majority of the court confined that decision,—a decision which, notwithstanding what was said and decided in the subsequent case of Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, still, admittedly, remains the law of the court, as applicable to the same state of facts. In the Ross Case, a conductor of a freight train, while he was running the train, possessed the powers specified in the regulations of the company, of which the following is a part:

"The conductor will have charge and control of the train, and of all persons employed in it, and is responsible for its movements, while on the road, except when his directions conflict with these regulations, or involve any risk or hazard, in which case the engineer will also be held responsible."

It was the conductor's express duty to show to the engineer of his train all orders which he received in regard to its movement, before leaving the station where they were received. On the night of the accident, the conductor forgot to tell the engineer of an order which had been received, to stop the train at a certain station, and wait for a gravel train; and in consequence a collision occurred, by which the engineer was severely injured. The action was brought against the railroad company to recover damages for this injury. The majority of the court, speaking by Mr. Justice Field, after an examination of the English decisions, and of the course of conflicting decisions in the states of this country, and of the reasoning which led to the respective results, came to a conclusion as follows:

"We agree with them [the Ohio and Kentucky courts] in holding—and the present case requires no further decision—that the conductor of a railway train, who commands its movements, directs when it shall start, at what stations it shall stop, at what speed it shall run, and has the general management of it, and control over the persons employed upon it, represents the

company, and, therefore, that for injuries resulting from his negligent acts the company is responsible. If such a conductor does not represent the company, then the train is operated without any representative of its owner."

The controlling reasons which led the minds of the majority to this result were stated, as follows:

"There is, in our judgment, a clear distinction to be made, in their relation to their common principal, between servants of a corporation, exercising no supervision over others, engaged with them in the same employment, and agents of the corporation, clothed with the control and management of a distinct department, in which their duty is entirely that of direction and superintendence. A conductor, having the entire control and management of a railway train, occupies a very different position from the brakemen, the porters, and other subordinates employed. He is in fact, and should be treated as, the personal representative of the corporation, for whose negligence it is responsible to subordinate servants. This view of his relation to the corporation seems to us a reasonable and just one, and it will insure more care in the selection of such agents, and thus give greater security to the servants engaged under him in an employment requiring the utmost vigilance on their part, and prompt and unhesitating obedience to his orders. The rule which applies to such agents of one railway corporation must apply to all, and many corporations operate every day several trains over hundreds of miles, at great distances apart, each being under the control and direction of a conductor specially appointed for its management. We know, from the manner in which railways are operated, that, subject to the general rules and orders of the directors of the companies, the conductor has entire control and management of the train to which he is assigned. He directs when it shall start, at what speed it shall run, at what stations it shall stop, and for what length of time, and everything essential to its successful movements, and all persons employed on it are subject to his orders. In no proper sense of the terms is he a fellow servant with the firemen, the brakemen, the porters, and the engineer. The latter are fellow servants in the running of the train under his direction. As to them and the train, he stands in the place of, and represents, the corporation."

When the question came again before the supreme court, in the Baugh Case, cited supra, which presented a different state of facts, the majority of the court, who spoke through Mr. Justice Brewer, took occasion to say that in the Ross Case it was not declared to be universally true that, by reason of the mere fact that one servant has control over another, they cease to be fellow servants, but that the general language in the charge to the jury in regard to the importance to be given to this circumstance was not erroneous "when applied to the case of a conductor having exclusive control of a train, in relation to other employes of the company, acting under him, on the same train." In the Baugh Case the engineer, who directed the movement of the engine when it was not being used in connection with a train of cars, and the injured fireman, were, in the opinion of the majority, engaged in a common employment. The engineer, notwithstanding the fact of his temporary control, was not the representative of the company. The decision also rested upon the fact that the known peril was voluntarily assumed by the fireman, who thus assumed the risk. When the two cases are analyzed, it will be seen that the facts which controlled the Ross decision did not exist, in their fullness and exactness, in the Baugh Case. In the case at bar the rule of the defendant was almost in the language of the rule in the Ross Case, and declared that the conductor, when upon the road, had the charge and control of the

train, and of all persons employed on it, and was responsible for its movements. There is also no question as to the actual representative character of the conductor. He had control in fact as well as in name. He directed the movements of the train,—when it should go forward, and when it should stand still. In the exercise of this authority, he moved the train too soon, without observing whether those under his control were in an ordinary place of safety, and thereby an accident happened. The significant facts in the two cases correspond, except that the negligence of the conductor, in the case at bar, was not as marked and gross as in the Ross Case. His negligence was in one of the details of the business, wherein he had authority, while the negligence in the Ross Case was in a particular which might be vital to all the lives, and to the existence of all the property, on board the train. The negligence of the two conductors differed materially in degree. It did not differ materially in its nature. The essence of the negligence of each was forgetfulness.

The second subject is the effect of the Canadian statute. There are two classes of statutes of limitations: One extinguishes the debt or claim; the other merely bars or prevents the remedy. And, as remedies are regulated only by the law of the place where they are pursued, this class of statutes created by one state does not prevent a remedy which is sought in a foreign state, but in such case the lex fori controls. Bulger v. Roche, 11 Pick. 36. The difference between the two classes was stated by Judge Story in his learned discussion upon the general subject in Le Roy v. Crowninshield, 2 Mason, 151, Fed. Cas. No. 8,269, as follows:

"Statutes of limitation may be so framed as merely to apply to the jurisdiction of a court. They may prohibit such court from taking cognizance of an action unless brought within a limited period after the right has accrued. Such statutes properly and emphatically belong to the regulation of judicial proceedings. Statutes of limitations may, on the other hand, declare, in terms, that contracts not sued for within a limited period shall be held to be utterly extinguished. Such contracts are a complete extinguishment or discharge of a contract, and constitute a universal bar, as much as a discharge under a bankrupt law."

No testimony was given in regard to the construction of the statute by the Canadian courts, and we have not found a controlling authority in the decisions of other courts, as to the construction of statutes, which use similar language. The statute purports to be one of extinguishment, but the prescription may be interrupted by acknowledgment on the part of the possessor or debtor, or the debt or claim may be revived after the prescription has run. The argument, therefore, is that, if the debt may be revived, after the full time of prescription has elapsed, the statute is not one of extinguishment. This suggestion does not meet the question, which, it is true, does not arise in this case, but which often may arise, and which is, what is the effect of the statute, when pleaded and shown, in an action in a foreign country, upon a debt due from a citizen of Canada to a citizen of Canada, when the time of prescription has run before suit, without interruption, while both parties resided in Canada, and the debt has never been revived? In the case of

Bulger v. Roche, supra, the debt was contracted between subjects of Nova Scotia, who remained there until the debt was extinguished by virtue of its statute of limitations; but, in the opinion of Chief Justice Shaw, the statute created no legal defense to an action by the creditor in the state of Massachusetts. The court treated the question as one arising under an ordinary statute of limitations, which merely affected the remedy. But, without attempting to pass upon what may be the effect of the statute under all circumstances, it is sufficient to say that, assuming that it possesses its largest character, and is a statute of extinguishment, it constituted no defense to the suit of this plaintiff in the state of Vermont, because, during the plaintiff's residence in Canada, it had not become operative, and had not extinguished the debt, so far as courts in states foreign to Canada are concerned. The injury happened on September 6, 1890. The plaintiff was at that time a citizen of Vermont, but after the injury he remained in Canada until April, 1891, when he returned to his mother's and his own home, in Vermont, and remained there continuously thereafter. When, before a statute of limitations has become operative, by way of extinguishment of the debt, as between two citizens or residents of a state, one of the parties has permanently changed his national domicile, and become a citizen of a foreign state, the statute will not become an absolute bar, as an extinguishment in the courts of such foreign state. It cannot become, in the country to which he has removed, an absolute extinguishment, unless the parties resided in the country of the statute during the whole period of limitation. Wood, Lim. Act. 22. The reasoning which leads to this result is stated by Judge Story, in his Conflict of Laws (section 582), as follows:

"Every nation has a complete and exclusive sovereignty to enact laws which shall limit all rights of action to certain prescribed periods within its own tribunals, and to declare that after that period all rights of action shall be extinguished; and, if the parties remain domiciled within the territorial jurisdiction during that whole period, the law, ipso facto, operates in the case, and the rights of action are completely extinguished there. But the same doctrine is not true, or rather may not be true, when, before the prescribed period has arrived, one or both of the parties have changed their national domicile, for by such change they have ceased to be under the exclusive dominion of the nation whose statute of limitation has begun to operate upon their rights of action, but has not yet extinguished them. The law thereof can no longer operate on those rights; at least, not operate except within the territorial rights of the nation. Elsewhere, they can be deemed to have only an inchoate and imperfect effect, and the change of domicile suspends their power to extinguish the rights of action in the future, since they can have no binding extraterritorial force. It is no answer to say that, when once the statute begins to run, no subsequent impediment stops it from continuing to run. That is true in the nation whose laws contain such provisions, or inculcate such a doctrine. But no other nation is bound to give effect to such provisions, or to such a doctrine."

This view of statutes of extinguishment was regarded as a reasonable one by Chief Justice Tindal in Huber v. Steiner, 2 Bing. (N. C.) 202.

A subordinate question, which arises upon the pleadings, was made by the plaintiff in error. The railroad company averred, in an amended plea, that by virtue of the Canadian statute the plain-

tiff's cause of action was extinguished and discharged to the same extent as if it had never existed. The plaintiff traversed the plea by its replication de injuria, upon which issue was joined to the country. There was no conflicting evidence in regard to the statute. At the close of the trial the defendant moved for a direction for a verdict in its favor; one ground of the motion being that, from the evidence received relating to the issue made upon the defendant's pleas as to the law of Canada, the defendant was not liable in this action. The court overruled the motion, and, upon the Canadian statute, held that it was not applicable to the action, and that consequently no question arose thereon for the consideration of the jury, to which decision the defendant excepted. The question which arose upon the undisputed evidence was merely as to its legal effect, and the court was properly not asked by the defendant to submit a question of fact upon the statute to the jury. The exception was to the ruling of the court upon the motion to direct a verdict that the statute of Canada was not applicable, and constituted no defense. The action of the court upon the motion to direct a verdict was proper. We perceive no error in the record, and the judgment is affirmed.