SMITH et al. v. WEBB.    (No. 15.)*

(Court of Civil Appeals of Texas. Beaumont. Dec. 2, 1915. Rehearing Denied Jan. 6, 1916.)

1. LIMITATION OF ACTIONS ⊕═2—RUNNING OF STATUTE—FOREIGN STATUTE.

Plaintiff, while working for defendants in the state of Louisiana, received personal injuries. The Louisiana statute prescribed a one year's limitation or prescription. Plaintiff and all of defendants resided within the state of the forum since the date of the injury. *Held*, that the Louisiana limitation statute did not apply to an action in the forum brought within the time prescribed by the local statute.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 4–8; Dec. Dig. ⊕═2.]

2. APPEAL AND ERROR ⊕═999 — REVIEW — FINDINGS.

Findings of the jury on contested fact issues should not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3912–3921, 3923, 3924; Dec. Dig. ⊕═999.]

3. MASTER AND SERVANT ⊕═288—INJURIES TO SERVANT — ASSUMPTION OF RISK — JURY QUESTION.

In an action by a servant for injury while on a ladder which was used by the master's servants, and which slipped, causing the injury, *held*, that under the evidence whether plaintiff assumed the risk of injury because the ladder was unfastened was for the jury; there being evidence that other servants did not know it was unfastened.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. ⊕═288.]

4. MASTER AND SERVANT ⊕═286—INJURIES TO SERVANT—JURY QUESTION.

Where a servant claimed that his injuries were caused by the master's negligent failure to fasten a ladder leading to a fuel oil tank, the question whether the master was guilty of negligence in that respect *held* properly submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ⊕═286.]

5. TRIAL ⊕═350 — SPECIAL ISSUES — SUBMISSION.

In such case a special issue was proper which submitted to the jury the question whether plaintiff, before injury, knew that the ladder was unfastened.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828–833; Dec. Dig. ⊕═350.]

6. MASTER AND SERVANT ⊕═289—INJURIES TO SERVANT—JURY QUESTION.

In an action by a servant injured while climbing a ladder to a fuel oil tank, the question whether he was charged with constructive notice that it was not fastened *held* properly submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. ⊕═289.]

7. MASTER AND SERVANT ⊕═235—INJURIES TO SERVANT—SAFE PLACE OF WORK.

It is the duty of a master to exercise ordinary care to provide for his servants a safe place to work, and the servant is entitled to assume that the master has done his duty in that respect. Therefore a servant required to use a ladder leading to a fuel oil tank is entitled to assume that the master has properly secured the ladder.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 710–722; Dec. Dig. ⊕═235.]

8. TRIAL ⊕═296—INJURIES TO SERVANT—ASSUMED RISK.

Where plaintiff was injured in mounting a ladder to see if a fuel oil tank was empty, and the court in submitting the issue whether he was charged with constructive notice that the ladder was not fastened informed the jury that a servant was not required to inspect the ladder, or to use ordinary care to see if it was fastened to the tank unless, under the terms of his contract, it became his duty to do so, further charges in submitting the issue whether plaintiff by the exercise of ordinary care would have discovered that the ladder was not fastened, that by "assumed risk" was meant the ordinary risks of service not caused by the negligence of the master, and that when the servant enters his employment he is entitled to rely upon the assumption that the appliances are reasonably safe, and need not use ordinary care to ascertain that fact, sufficiently submitted to the jury the question of assumption of risk.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. ⊕═296.]

9. MASTER AND SERVANT ⊕═286—INJURIES TO SERVANT—JURY QUESTION.

Where plaintiff, who was injured while he was on a ladder furnished by the master, claimed that the master was negligent in failing to inform him that the ladder was not fastened, and the evidence on that issue was conflicting, the question whether the failure to warn was negligence was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ⊕═286.]

10. APPEAL AND ERROR ⊕═882—INVITED ERROR—RIGHT TO COMPLAIN.

Where defendants requested the court to submit an almost identical proposition, they cannot complain of the submission on a special issue of a similar proposition.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. ⊕═882.]

11. TRIAL ⊕═350 — INJURIES TO SERVANT — SPECIAL ISSUES.

Where a servant was injured while on a ladder leading to a fuel oil tank, which he was using to look into the tank to see whether the oil had run out, the submission of the special issue whether the fact that the ladder was not attached to the tank was open and obvious to one possessing ordinary senses, and would have been discovered by one in the service of defendants for two weeks as the servant had been, was proper; the negligence alleged being that the master failed to fasten the ladder.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828–833; Dec. Dig. ⊕═350.]

12. TRIAL ⊕═350 — INJURIES TO SERVANT — SPECIAL ISSUES.

In such case, it was proper to submit to the jury the question as to whose duty it was to fasten the ladder; the evidence on the issue being conflicting.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828–833; Dec. Dig. ⊕═350.]

---

⊕═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

13. TRIAL &bullet;=260—INSTRUCTIONS—REFUSAL.

The refusal of a charge covered by the charges given is not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. &bullet;=260.]

14. APPEAL AND ERROR &bullet;=1004—REVIEW—VERDICT.

Where it did not appear the result of passion or prejudice, an award of damages in a personal injury action will not be disturbed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. &bullet;= 1004.]

Appeal from District Court, Jefferson County; W. H. Davidson, Judge.

Action by R. W. Webb against C. L. Smith and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Howth & Adams, of Beaumont, for appellants. J. A. Harrison, of Beaumont, and McCoy & Moss, of Lake Charles, La., for appellee.

BROOKE, J. This was a suit brought by R. W. Webb against C. L. Smith and others, in the district court of Jefferson county, Tex., for personal injuries alleged to have been sustained by him on the 13th day of August, 1911, while in the employment of said defendants as fireman and helper in the drilling of a certain oil well in the Vinton oil field in Calcasieu parish, La. At the time of the filing of this suit, plaintiff alleged that he resided in Jefferson county, Tex., and that he had not resided in the state of Louisiana from the 1st day of August, 1911; that plaintiff was employed to fire the boiler and look after the fuel tank which furnished oil for the boiler; that the fuel tank was an upground wood tank about 12 or 14 feet high; that a ladder was placed against same by defendants, to provide a way to ascend the tank for the purpose of inspecting the flow of oil therein, so as to see when the tank was sufficiently full of oil. It is further alleged that said plaintiff, in the course of his duties, on the date mentioned, went up said ladder to see how much oil was in the fuel tank, and that while he was at the top of said tank, and was leaning over same, so that he could look into the tank, and see how much oil was in same, the ladder slipped and fell, whereby he was injured.

The grounds of negligence on which plaintiff based his claim of action are as follows: (1) That defendants and their agents placed or leaned said ladder against the tank, and negligently failed and omitted to secure same to the tank, so that it would not slip or fall. (2) That defendants negligently failed and omitted to warn or notify plaintiff that said ladder was not fastened, but was merely standing against said tank. (3) That therein defendants negligently failed to provide plaintiff with a reasonably safe place to work.

In their first amended original answer, upon which they went to trial, defendants,

after general demurrer, answered fully as required under the then statute, to the allegations in each paragraph of ·plaintiff's petition, substantially as follows: That said ladder was so placed by either Webb himself, or another employé, and that the same rested one end upon the ground and one against the fuel tank near the top thereof, same being about 10 feet high. That plaintiff, at the time of his injuries, had been working for the defendants 13 days at the same job. That the ladder was not attached to the tank, and that plaintiff knew that it was not so attached, and that it was customary in the Vinton fields and other surrounding fields, under the same and similar circumstances, not to fasten such ladder, and that, if said ladder should have been fastened, it was the duty of the plaintiff to do so. That plaintiff was not caused to fall through the slipping of the ladder, but by plaintiff falling or slipping off said ladder through fault and negligence on his own part, in the manner in which he went up and down on said ladder. That his injuries were the result of dangers ordinarily incident to the work of his employment, and were the direct result of risks negligently assumed by him. That at the time he entered upon the duties of his employment he knew that the ladder was not attached or fastened to said tank, or by the exercise of ordinary care, in the course of his work, during the period of his employment, to wit, about two weeks, he could and would have discovered said ladder was not fastened or attached, and that, if he had exercised due care in the discharge of his own particular duties, he would necessarily have discovered said conditions, and the danger thereof, if any. That at the time of his entering on the employment, he was a man of large and long experience in the oil business generally, and especially as helper in drilling wells in the work in which he was then employed, and was fully acquainted with the usual and customary ways of carrying on said work in the oil fields at Vinton, and in surrounding fields of Louisiana, Texas, and Oklahoma, and that he actually knew, or by the exercise of ordinary care, in the discharge of his own particular duties, would necessarily have learned, that other operators, or at least a majority of them, did not usually and customarily secure or fasten the ladder to the fuel tank, under like conditions or circumstances. That plaintiff had between seven and ten years' experience in such work, and in other work in and around the oil fields aforesaid, and must thereby have acquired either actual or constructive knowledge of the customary manner of carrying on said work under the same and like conditions, and that it was not customary to attach said ladder to the fuel tank. That even an inexperienced man, in the course of said work, in going

up and down on said ladder to look at the oil in said tank, would necessarily discover and know that the ladder was not attached or fastened to the tank. In further answer to said suit, the defendants further plead the prescription law of Louisiana, to wit, what is known in Texas as the law of limitation, showing to the court that at the time of the plaintiff's injuries the common law did not then nor has ever obtained in the state of Louisiana, but on the contrary, what is known as the civil law, same being the civil law as adopted, incorporated, or modified by the statutory law of said state, was then and now is and has always been the law in the state of Louisiana. That the law of Louisiana applicable to the facts and circumstances of this case and in general to cases of personal injury, resulting from negligence, was then and there, and is still, regulated and controlled and is based on the statute of said state, and specifically setting forth verbatim the laws relating thereto. Defendants in their answer alleged, and throughout the trial of said cause urgently insisted, that said cause of action, if any there ever was, is based and founded upon the statutes of the state of Louisiana, and that the prescription laws of that state not only make the right unenforceable after the prescribed period of one year from the date of damage, but totally extinguish and discharge it, and that by said statute, and as construed by the highest court of the state of Louisiana, both said right of action and remedy were totally and absolutely extinguished, after the lapse of one year from the date of damage, no suit having been filed to enforce the right, either in Louisiana or in the state of Texas, or in any other state, and that, as shown by the plaintiff's petition, the injuries occurred on August 13, 1911, and that he did not file his suit to recover for said damages herein until August 5, 1913, long after the lapse of one year from the date of said injuries, and lacking just eight days of being two years from the date thereof. Wherefore it was alleged that the prescription law of Louisiana had run, and that on and after the 13th day of August, 1912, said cause of action and the remedy therefor were absolutely and totally extinguished. Defendants further alleged, in defense, that it was usual and customary, among oil operators of ordinary prudence, under the same and like conditions, in the Vinton oil field, and other oil localities in the states of Louisiana, Texas, and Oklahoma, and elsewhere, not to attach ladders to fuel tanks which are small and low, making it not unsafe to carry on the work without having the ladder stationary or fastened, but that, on the contrary, in said localities, it was customary and usual for such oil operators generally to carry on the work as it was being carried on by the defendants on the occasion in question. Defendants further answered that under the laws of the state of Louisiana, as construed and explained by the highest court of said state, the defense of contributory negligence and assumed risk, as heretofore pleaded as separate and distinct defenses, to plaintiff's cause of action, would be and are complete and absolute defenses thereto.

Plaintiff, Webb, filed his supplemental petition in reply to defendants' first amended original answer, in which he denied all of the new matters, the material allegations of defendants; but it was admitted that the statutes of the state of Louisiana applicable to this cause of action were substantially as stated by defendants in their answer, but denied that said cause of action was controlled by the Louisiana prescription law of one year.

On October 24, 1914, defendants filed their trial amendment, and as additional grounds of defense alleged that plaintiff, Webb, was guilty of contributory negligence, in that he went upon said ladder to the top of the fuel tank, during the nighttime, to wit, about 10 o'clock at night, and that in so doing he was entirely outside of the scope of his employment, and not within the course of his duties, and that he had never been ordered or instructed to go upon said ladder during the nighttime, nor was he expected so to do; that it was not customary for employés in his position to go upon said ladder in the nighttime for the purpose of looking into the fuel tank; but that it was customary in performing his duties to have the said fuel tank filled with sufficient oil to last during the night, without having to refill it.

During the trial of the cause, and after plaintiff had introduced testimony and rested, and before defendants had introduced any testimony, the defendants moved the court, by written motion, to instruct the jury to find for the defendants, because said cause of action was barred by the prescription law of Louisiana of one year, and also because the undisputed facts failed to show any negligent act or omission on the part of the defendants, and also because the undisputed facts showed that as a matter of law the plaintiff knew, or must necessarily have known, that the ladder was not fastened or secured, and that he knew, or must necessarily have known, the danger thereof. The motion was overruled by the court, to which defendants excepted.

Thereafter, all of the evidence of defendants and the rebuttal evidence of the plaintiff having been introduced, defendants again, by written motion, requested the court to instruct the jury to bring in a verdict for defendants for substantially the same reasons as urged in the same motion. This motion was also overruled by the court, and defendants excepted.

Thereupon the court's charge having been handed to defendant's counsel for inspection, written objections to said charge, as pre-

sented by them, and also several written special requested charges, were by them handed to the court and to opposing counsel for inspection within a reasonable time, and before the court's main charge was read to the jury, as required by the statute, and the court refused to correct or amend its main charge in said particulars thus pointed out, and refused to give the special charges as requested by defendants, to all of which exceptions were duly taken, said cause was submitted to the jury on special issues of fact, all of which were found by the jury in favor of the plaintiff, and his damage assessed in the sum of $11,000.

In due course final judgment was entered upon said verdict in favor of plaintiff against the defendants in said sum. Within the time required by law, defendants filed their motion for new trial, and also during the same term filed the amended motion for new trial, all of which were overruled, to which the defendants duly excepted and gave notice of appeal, and requested and were allowed a period of 90 days within which to file a statement of facts and their bills of exception. Thereafter, within the time required by law, defendants filed their appeal and supersedeas bond, and within the time granted by the court filed their bills of exception, also their statement of facts, and this appeal was then properly before the Court of Civil Appeals at Galveston, from which court it has been legally transferred to this court. An agreement in writing was, on the 25th day of February, 1915, entered into by the attorneys for both parties, whereby defendants were not required to file their briefs before filing the transcript in this court, and are permitted to file their briefs at any time before the submission of said cause.

The foregoing statement is admitted to be true by the appellee, save and except and with the additional statement that all of the defendants continued to reside in the state of Texas from the day plaintiff was injured until the time of the trial, and that neither the plaintiff nor any of the defendants resided in the state of Louisiana from the date of said injury.

[1] Appellants, by their first and second assignments of error, assail the action of the lower court in refusing to instruct the jury to bring in a verdict for the defendants. Their first proposition under these two assignments is that the cause of action was barred by the prescription or limitation statute of the state of Louisiana. We have carefully read the authorities cited on this question, both by the appellants and the appellee, as well as other available authorities.

In the case of Ross v. Railway Co., 34 Tex. Civ. App. 586, 79 S. W. 626, the action was instituted by the appellant in the district court of Bowie county, Tex., for the recovery of actual damages on the Kansas

City Southern Railway Company. After the evidence had been heard, the trial court peremptorily instructed the jury to return a verdict for the appellee, responsive to such portion of his answer, which interposed the defense of a bar by one year's limitation, under the statutes of the state of Louisiana. Appellant resided in the state of Louisiana, where his injuries occurred on the 20th day of May, 1901. The suit was filed in the district court of Bowie county, on the 14th day of June, 1902, more than a year, but less than two years after the cause of action accrued. The court said:

"(1) The cause of action, on which plaintiff sought a recovery, was created by the statutes of the state of Louisiana. (2) The prescription laws of that state directly referring to the right thus created not only make the right unenforceable after the prescribed period, but totally extinguished and discharged it. (3) Both parties resided in the state of Louisiana during the period of prescription, and no suit was instituted there or elsewhere during that time on the claim. It is further shown that the common law does not, and never did, prevail in the state of Louisiana."

The court further said:

"It is a well-settled rule that the remedies, as distinguished from the rights of the parties, are determined by the law of the forum, and that the statutes of limitations are a part of the remedy, and not of the law affecting the rights. * * * This rule, however, is not without its exception. An exception exists where a statutory liability is sought to be enforced, and the statutes prescribe a time within which the suit must be brought, and extinguish the cause of action or right of recovery after such time. * * * This exception was first pointed out by Judge Story in section 582 of his Conflict of Laws. The Supreme Court of this state recognizes the principle, and cites with approval this section of Story on Conflict of Laws in the early case of Hays v. Cage, 2 Tex. 506, on top of the page. The principle seems also to be recognized in the case of Goldfrank v. Young, 64 Tex. 435, 436.

"Appellant insists that this case does not fall within the exception stated, for it is shown that the appellee was incorporated under the laws of Missouri, and is a citizen of that state, and that the exception only applies where both parties reside in the state where the injury was inflicted. This contention is not sound. The fact that the appellee was incorporated by the laws of Missouri could not, under the facts, affect the question. It had constructed its railroad in Louisiana, and, at the time appellant was injured, was operating the same in that state. Its railroad remains, as it was at the time of the injury, within the jurisdiction of Louisiana, and is liable to suit there, according to the laws of that state. Appellant was at the time he was injured, and still is a citizen and resident of that state (citing Railway Co. v. Jackson, 89 Tex. 116 [33 S. W. 857, 31 L. R. A. 276, 59 Am. St. Rep. 28]). It is clear that, by the statutes of Louisiana, in existence at the time the cause of action was created, the same was extinguished at the end of one year from the time the cause of action arose, in the absence of suit thereon. Such being the effect of the statutes of Louisiana, suit could not be maintained in this state after one year from the time of the accrual of the right of action."

In the case of Railway Co. v. Sizemore, 53 Tex. Civ. App. 491, 116 S. W. 403, Sizemore sued the St. Louis Southwestern Railway

Company of Texas and others to recover damages for personal injuries sustained by his wife, which resulted in death, while traveling as a passenger on the train of the St. Louis & San Francisco Railway Company at Memphis, Tenn., on a ticket entitling her to transportation from Columbus, Ga., to Commerce, Tex., over the roads named as defendants. The appellant railroad company complained of the refusal of the court to give special instruction to the effect that plaintiff's cause of action was barred by the statute of limitation of the state of Tennessee.

The evidence shows that plaintiff's wife was injured while traveling on appellant's road in the state of Tennessee in October, 1004, and this action was filed in September, 1906, less than two years after the injury. The question for decision is whether the law as to limitation of Tennessee or Texas applies to this case. The court said:

"It is a well-settled rule that the remedies as distinguished from the rights of the parties are determined by the law of the forum, and that the statutes of limitation are a part of the remedy, and not of the law affecting the rights" —citing the Ross Case, supra, and other cases.

Continuing, the court says:

"There is an exception to this rule: 'It exists where a statutory liability is sought to be enforced, and the statutes prescribe the time within which the suit must be brought and extinguishes the cause of action or right of recovery after such time.' The exception does not exist in this case. The statute of Tennessee that gives a right of recovery for death occasioned by the wrongful act of another does not extinguish the right of recovery if suit is not commenced within a prescribed time, but the general rule of limitation, which is a remedy, applies, and the rights thereunder are governed by the law of the forum. Therefore the law of this state, which is two years, applies, and this action was not barred. Since the time of the accident until her death Mrs. Ella Sizemore was a resident of Texas, and the appellant was a resident of Texas, and the appellant was incorporated under the laws of Missouri, and operating trains in both Tennessee and Texas."

In the case of Williams v. St. L. & S. F. Ry. Co., 123 Mo. 573, 27 S. W. 387, which was decided by the Supreme Court of the state of Missouri, the court said:

"This action was commenced in Greene county, Mo., December 20, 1889, and change of venue awarded to Dade county. The suit is to recover damages for personal injuries received by the plaintiff in a wreck of defendant's train at High Lonesome Hill, near Severy, Kan., January 1, 1885. The amended petition on which the case was tried alleged that defendant was a railroad corporation, organized under the laws of Missouri, owning and operating a line extending from Wichita, Kan., to Springfield, Mo. * * *

"The defendant insists that the statute of limitation of Kansas not only barred the remedy, but extinguishes the right of action * * * accrued there, and, the limitation in that state being two years, the plaintiff is barred, although by the laws of this state, of which both plaintiff and defendant are residents (this state being Missouri), the limitation for such an action as this is five years.

"Section 25 (section 3446, Comp. Laws Kan. 1879) declares: 'When a right of action is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground of defence.' And the statute relied on as creating the bar in this case (section 3539) provides: 'Civil actions for injury to the right of another, not arising out of a contract, can only be brought within two years after such injury shall have accrued and not afterwards.' We think that these two sections are only ordinary statutes of limitations, which affect the remedy only, and do not extinguish the right, and are so construed by the courts of this state and Kansas, as we understand them. (Citing authorities.) But, if said statutes were to be construed as statutes extinguishing the right, still defendant's answer does not bring it within the distinction first made by Judge Story between statutes which affect the remedy and those affecting the right, because his qualification of that rule *required that both parties should continue to reside in the state where the law extinguishing the right of action prevails during the full period of limitations, so that it could act both upon the parties and the cause of action.* (Italics ours.) Now, there is no averment in this plea that plaintiff and defendant were either residents of Kansas for two years after this action accrued. The mere allegation that defendant had agents in Kansas, who could have been served during all that time, by no means brings it within the rule. (Citing authorities.) Statutes of limitations constitute a part of the lex fori of every civilized country, and, like other remedies, are governed by the law of the place where the action is brought or remedy is sought. This action is brought in the courts of Missouri, and plaintiff is entitled to the remedies afforded by our laws, unless defendant can bring itself within the qualification made by Judge Story, and approved by this court in McMerty v. Morrison, 62 Mo. 140, and this he has not done. (Citing numerous authorities.) Moreover, plaintiff's cause of action is founded upon a tort at common law. He was a citizen of this state when the injury occurred to him in Kansas. He returned at once to his home, in this state, and has never since resided in Kansas. His cause of action was good wherever the common law prevailed, and he brought his action within the time prescribed by our statutes in such cases. In such a case, * * * the right of action depends upon the common law or a local statute, unless the local statute which creates the right also limits the duration of the right within a prescribed time."

In the case of Moores et al. v. Winter, 67 Ark. 189, 53 S. W. 1057, which is an Arkansas case, it is alleged that on April 21, 1896, appellee, Joseph Winter, brought suit in the Miller circuit court against appellants, Chas. F. Moores and W. A. Payne. He alleged in his complaint that Moores was sheriff of Bowie county, Tex., and Payne was his deputy; that under an order an attachment issued out of the county court of Bowie county, Tex., in a cause then pending in said court, wherein A. F. Shapleigh Hardware Company was plaintiff, and Sam S. Faulk was defendant, appellant Payne seized and took from the possession of appellee the personal property described in this complaint; that appellee was the owner and in possession of all of said property, and no part thereof was the property of said Faulk, nor liable to seizure under said attachment; that appellant Payne thereafter sold said property, and applied the proceeds of said sale to the payment of the claim of the Shapleigh Hardware Company against Sam S. Faulk; that in making said seizure and sale appellant Payne acted under the advice and direction of appellant Moores,

and with his approval and consent; and that thereafter appellant Moores ratified and confirmed the act of appellant Payne in making such seizure and sale; that the property so seized and sold was of the value of $309.22.

The appellant insists that the two years' statute of limitations of Texas bars this action. The action was brought after two years had expired from the date of the trespass, and, had it been brought in Texas, where the trespass was committed, it would have been barred under the Texas statute of limitations, but the action was brought in Arkansas, where the plaintiff had his residence, and had been a citizen for 20 years, and within 3 years after the cause of action accrued. The court, in the opinion in this case, said:

" 'The recovery must be sought and remedy pursued within the time prescribed by our own law—the lex fori—without regard to the place where the cause of action or its merits originated.' (Citing Blackburn v. Morton, 18 Ark. 385–395.) 'When, however, the action is for a tort at common law, the statute of the forum governs.' (Citing authorities.) The merits of a cause are determined by the law of the place where it arose, and the mode of procedure and remedy by the law of the forum or place where the action is brought, including the statute of limitations. The evidence shows that the appellee was a citizen of this state when he brought this action, and had been for 20 years. If the two-year statute of limitations of Texas could be said to have extinguished plaintiff's right of action in that state, it could have no such operation in this case, *as it is only when the parties to the action reside in the state where the law extinguishes the cause of action during the full period of limitation, so that it has actually operated on the parties and on the case, that the statute of limitation can be pleaded in bar of an action in a foreign jurisdiction.* Story, Confl. Laws, 478; Finnell v. Railway Co. [C. C.] 33 Fed. 427."

In Railway Co. v. Mills, 53 Tex. Civ. App. 359, 116 S. W. 852, the court, speaking through Justice Fly, says:

"The uncontradicted testimony showed that appellee was a resident of California when the injuries were inflicted. Appellee swore that he had been in the service of appellant for about eight weeks before the accident occurred, that when he was employed he was a citizen of Los Angeles, Cal., being a voter there, and that he did not intend to make New Mexico his home. He stated: 'At the time of this accident, on the 14th day of November, 1906, my home was in Los Angeles, Cal. I was a citizen of that [state and] city at that time.' Being a citizen of California, he could not be compelled by a territorial law to bring suit for his damages in a court of the territory or forego his right to recover. For reasons satisfactory to this court and to the Supreme Court of Texas, we have held that such requirement did not bind the citizens of any state of the Union. Railway v. Sowers, 99 S. W. 190. In that case it was said: 'The state of Texas is bound, under section 1, art. 4, of the Constitution of the United States, to give full faith and credit to the public acts, records, and judicial proceedings of every other state; but it is not required to recognize a statute of any state that seeks to fix the jurisdiction of Texas courts and prevent the citizens of other states from using its courts, if they so desire, in the enforcement of their rights. The jurisdiction of our courts must and will be prescribed by the constitutional and legislative authority of our state, and not by that of any other state. A law attempting such interference is null and void, and as such does not come within the constitutional provision aforementioned.' This court is asked by appellant to give careful consideration to the case of Swisher v. Railway, 76 Kan. 97 [90 Pac. 812], a decision by the Supreme Court of Kansas, the statement being made that the 'identical question was considered as is involved.' We find, however, that the case was one in which the parents of John W. Swisher had sued for damages alleged to have accrued by reason of his death in New Mexico, and a dismissal of the suit in the lower court was sustained on the ground that the cause of action for damages arising from the death of a person was not given by the common law, but was created by the law of the territory, and the right to sue could only exist with the restrictions contained in that law. The court, after quoting from several authorities, said: 'We think that an action in this state for a wrongful death occasioned in another state or territory is incumbered with all the limitations and burdens which may have been imposed by the statutes of the state where the right of action was created.'

"We believe that to be a correct enunciation of law, but it was announced in a very different case from this, and does not apply to any action arising by virtue of the common law, and not by statute. Appellee does not have the right to appear in court and seek redress by virtue of the law of New Mexico, but by virtue of the common law, which extends to him the right to sue for damages arising from injury to his person wherever he may find the party that inflicted the injury on him.

"This being a transitory common-law action, appellee had the right to sue the wrongdoer wherever he could find him, and the laws of limitation as applied to such action in the state where the action is instituted, and not those of the place of the injury, would prevail. If the right of action depended on the statute of the territory, then the bar created by statute, if the action was not instituted in a certain time, would bar the action wherever instituted; but the rule is different where the cause of action exists independent of statutory provision and the law of the forum would prevail. (Citing Gautier v. Franklin, 1 Tex. 732; Williams v. Railway, 123 Mo. 573, 27 S. W. 387.) Appellee did not institute his suit under or by virtue of the statute of New Mexico, but, as a citizen of California, he exercised his common-law right to sue appellant in Texas because he found appellant here, and the law of the forum that he chose, as to limitations, must be applied to his action, and not a provision of a law of New Mexico. The law of New Mexico did not give him his right of action; he does not invoke that law in aid of his action, but he invoked the aid of a law as broad as the confines of civilization, and under its beneficent operation asks redress for the wrongs perpetrated on him. If, however, it should be concluded that by the enactment of the law invoked by the appellant the common-law right of action was annulled, and that by the provisions of the statute no one could sue a railroad corporation for inflicting injuries to his person, unless various and sundry, onerous, and harassing conditions were complied with, and unless the suit was instituted in a territorial court within one year from the time the right of action accrued, still the provision as to the suit being brought in one year could have no application to the rights of appellee, unless it appeared that he and appellant had continued to reside in New Mexico during the full period of limitations, so that it could act both upon the parties and the cause of action. Story, Conflict of Laws, 581; Wood, Lim., par. 8, p. 34; Finnell v. Railway Co. [C. C.] 33 Fed. 427; Railway Co. v. Johnston, 61 Fed. 738 [9 C. C. A. 587, 25 L. R. A. 470]; Williams v. Railway [123 Mo. 573] 27 S. W. 387; Nonce v. Railway [C. C.] 33 Fed. 429."

In the instant case, the defendants were sued as private persons in the state of Texas, and plaintiff's petition alleges that the defendants Smith and Newman resided in Jefferson county, Tex., and the defendants W. H. Stark and E. W. Brown reside in Orange county, Tex., and that all of said above parties resided in the counties of their place of residence on August 1, 1911, and have continuously resided there up until the present time, and neither the plaintiff nor any of the defendants have resided in the state of Louisiana. It was alleged further that the injuries which are the basis of plaintiff's suit occurred on August 13, 1911.

R. W. Webb, the plaintiff, testified as follows:

"I moved to Texas in 1886. I moved to Sabine Pass, and Taylor's Bayou or Hampshire, Jefferson county, Tex., has been my place of residence since I moved to Sabine Pass in 1886."

This is not disputed by anything in this record. Therefore the record plainly shows that both the plaintiff and all of the defendants have resided within the limits of the state of Texas since the date of the injury. From what has been said above, and authorities quoted, we are of the opinion that, in order for the statute of limitation or prescription of the state of Louisiana to have applied in the present case, it would have been necessary for the parties to have resided in the state of Louisiana from the date of the injury to the time affixed by the statutes of that state within which the right to suit would be barred.

[2] Appellant's second proposition under the first and second assignments is that as a matter of law plaintiff assumed the risks and dangers upon which his cause of action is based, in that he knew, or must necessarily have known, by the exercise of ordinary care on his part for his own safety while in the discharge of his duties, of all the negligences, if any, and dangers thereof, alleged and shown by the evidence, in this, that he knew the said ladder was not fastened or secured, or did or must necessarily have discovered said fact in the usual and ordinary discharges of his duties.

The appellee was injured by the slipping of a ladder placed against an oil tank while ascending the same to find whether the tank was properly filled, and the question of whether or not he knew by the exercise of ordinary care that the ladder was not fastened or secured, and that he would or must necessarily have discovered said fact in the usual and ordinary discharge of his duties, was a question of fact, and was submitted to the jury by the court as follows:

"Considering all the facts and circumstances in evidence before you, did the plaintiff, before he was injured, if he was injured, know that said ladder was not fastened? Answer 'Yes' or 'No.'"

And further submitted:

"Did the plaintiff, in using said ladder, during the time he used it, necessarily acquire in the ordinary discharge of his duties knowledge that the ladder was not fastened?

"If you have answered that plaintiff did not actually know that said ladder was not fastened, then would plaintiff have discovered, had he exercised ordinary care in using said ladder, before he was injured, that the same was not fastened?"

The jury found against appellants, and it being a contested question of fact, and the evidence conflicting on the issue, we are not disposed to disturb the findings.

[3] Appellants' third and fourth propositions state that the undisputed facts do not show any negligence or act of omission on the part of the defendants, and the evidence does not justify the submission to the jury of whether or not the defendants were guilty of negligence in not fastening the ladder to the fuel tank.

The evidence shows, and defendants admitted in their pleadings, that the ladder was not fastened or nailed to the tank, and that the ladder was placed and arranged as it was by the defendant. The evidence of the witness Perkins shows that he gauged oil in said tank for a considerable period of time, using the ladder for that purpose, and that he did not know that said ladder was not fastened, that he could not tell from its appearance whether it was fastened. The court submitted issue No. 12, as follows:

"Was the fact that the ladder was not attached to the fuel tank open and obvious to one possessing ordinary senses, and having the age and experience as you may find from the evidence plaintiff had in performing the duties plaintiff was during the 13 days of his employment?" To which the jury answered, "No."

The jury having passed on this disputed question, we are not disposed to interfere with its finding.

Appellants' fifth proposition under the said assignment is that as a matter of law, under the evidence, the plaintiff assumed the risk of danger, if any, incident to the ladder not being fastened to the fuel tank, for that such evidence showed that it was customary for all employés engaged in such work in the Vinton Oil field and surrounding oil fields in Louisiana, Texas, and Oklahoma, in carrying on that kind of work in the way in which it was being carried on by defendants in this case, to wit, by having the ladder to the fuel tank unfastened and by leaving it entirely to the employés to fasten the ladder to this fuel tank or not to do so, as they pleased.

It was a question of fact to be found from all the evidence whether the plaintiff assumed the risk incident to the ladder not being fastened, and this was submitted under appropriate instructions by the court, and the matter was settled by the jury, and we cannot say improperly so. Therefore we overrule appellants' first and second assignments of error.

The appellants' third assignment again raises the question with reference to the cause of action being barred by limitation.

What we have said before disposes of this issue, and we overrule said assignment.

By the fourth assignment, appellants again raise the proposition that the evidence showed that plaintiff, at the time of his injuries, in fact knew the ladder in question was not attached to the fuel tank, or, by the use of ordinary care in the discharge of his duties in going up and down on said ladder daily for a period of thirteen days, would necessarily have discovered that the ladder was not fastened, and must have known the danger thereof, and that he therefore assumed the risk incident to the ladder not being fastened.

What has been said before disposes of this assignment of error, and the same is overruled.

[4] The fifth assignment of error is as follows:

"The court erred in submitting to the jury for their determination the issue of fact No. 1, to wit, 'were the defendants guilty of negligence in not attaching or fastening the ladder to the fuel tank in question?'"

This was a negligence pleaded by the plaintiffs, and testimony pro and con was introduced by both parties, and submitted by the court as an issue to the jury for their determination, and in our opinion it was a question for the jury to decide, and we cannot say, in the light of the testimony of this record, that it was improperly decided. Therefore this assignment is overruled.

[5] The action of the court is assailed by the sixth assignment of error in submitting to the jury for their determination special issue No. 3, as follows:

"Considering all the facts and circumstances in evidence before you, did the plaintiff, before he was injured, know that said ladder was not fastened?"

It was an issue of fact as to whether or not plaintiff knew the ladder in question was not fastened when he was injured. The court requests a finding on this issue, we think correctly so. Therefore the said assignment is overruled.

[6] Appellants base error by their seventh assignment of error on the court submitting for the jury's determination issue No. 4, as follows:

"And in this connection you are charged that plaintiff was not required to inspect or test said ladder to see if same was attached or fastened to the tank, or use ordinary care to see if same was fastened to the tank, unless under the terms of his contract of employment it became his duty so to do."

Appellants claimed that the constructive knowledge of the plaintiff with respect to whether or not the ladder was fastened, was, under all the circumstances, one that should have been determined by the court, and should not have been submitted to the jury, and that the evidence on said issue was insufficient to support a finding for the plaintiff.

We overrule this assignment.

[7, 8] It is claimed in the eighth assignment of error that there was error in the manner in which the court submitted for the jury's determination issue No. 4, in instructing the jury on that issue, that:

"In this connection you are charged that plaintiff was not required to inspect or test said ladder to see if same was attached or fastened to the tank, or to use ordinary care to see if same was fastened to the tank, unless under the terms of his contract of employment it became his duty so to do."

Appellants claim that the qualification on said issue was not properly stated by the court, and that the proper submission would have been:

"Did the plaintiff in using said ladder during the time he used it, considering his age and experience, necessarily discover, in using ordinary care in performing his duties, and for his own protection, that the ladder was not fastened to the tank?"

And that the court erred in charging the jury that the plaintiff was not required to test or inspect said ladder to see if same was attached or fastened to the tank, etc.

We understand that the burden was placed upon the master to exercise ordinary care to provide for his servants a safe place to work, and that the servant has a right to presume that the master has done his duty in that respect.

The court, in submitting issue No. 7 to the jury, used the following language:

"If you have answered that plaintiff did not actually know that said ladder was not fastened, then would plaintiff have discovered, had he exercised ordinary care in using said ladder before he was injured, that the same was not fastened?" To which the jury answered, "No."

The court further instructed the jury on the question of assumed risk as follows:

"You are further instructed that by 'assumed risk,' as meant in the charge, is meant the ordinary risk of service not caused by the negligence of the master. It was the duty of the defendant to exercise ordinary care to furnish plaintiff with a reasonably safe place upon which to perform the duties required of him, and, when the plaintiff entered the employment of defendants, he had the right to rely upon the assumption that the ladder in question was reasonably safe, and was not required to use ordinary care to see whether or not the ladder was safe, and he did not assume the risk arising from the failure of the defendant to do this duty if it was a failure, unless he knew of the failure and attendant risk, or, in the ordinary discharge of his own duties, must necessarily have acquired said knowledge, or unless by the terms and nature of his employment it was made the duty of the plaintiff to inspect the place upon which he was to work, and he failed to make such inspection."

We think that the question submitted under special issue No. 7 and the special charge on assumed risk cover the matters complained of. Therefore said assignment is overruled.

[9] By the ninth assignment it is claimed that the court erred in submitting to the jury for their determination issue No. 5, as follows:

"Defendants admit that they failed to notify or warn plaintiff that the ladder was not fastened. Was such failure negligence?"

We think the issue was properly submitted, and as that was one of the grounds of neg-

ligence relied on by plaintiff, and was a disputed issue of fact, this assignment is overruled.

[10] Error is also predicated by the tenth assignment on the court submitting issue No. 7, as follows:

"If you have answered that plaintiff did not actually know that said ladder was not fastened, then would plaintiff have discovered, had he exercised ordinary care in using said ladder, before he was injured, that the same was not fastened?"

We do not see how appellants can complain of the submission of said issue to the jury, as they requested the court to submit an almost identical proposition; that is, they asked the court to submit to the jury the following:

"At the time or before plaintiff went upon said ladder on the occasion of his falling, would he have discovered and known said ladder was not fastened or attached to the tank by the use of ordinary care for his own safety in the discharge of his own particular duties during the 13 days he was engaged in said work? Answer this question 'Yes' or 'No.' Assuming that plaintiff had exercised ordinary care in discharging his own duties for his own protection in the discharge of his own duties as a fireman in gauging the fuel tank during the 13 days he was performing said work for the defendants, would he have discovered and learned whether or not said ladder was attached to the fuel tank? Answer this question 'Yes' or 'No.' "

Having substantially requested the said charge, we see no reason why appellants should be heard to complain. Besides the issue of contributory negligence and the question asked was, under the circumstances, a proper one. The assignment is overruled.

[11] Complaint is made by the eleventh assignment of error that the court erred in submitting issue No. 12, as follows:

"Was the fact that the ladder was not attached to the fuel tank open and obvious to one possessing ordinary senses and having the age and experience as you may find from the evidence plaintiff had in performing the duties plaintiff was performing during the 13 days of his employment?"

We see no error in the question, and the assignment is overruled.

[12] The action of the court is attacked by appellants' twelfth assignment of error in submitting issue No. 13 to the jury, as follows:

"Whose duty was it, if it was the duty of any one, to attach or fasten the ladder to the fuel tank?"

We think it is a question of fact to be determined by the jury, and was properly submitted, and this assignment is overruled.

The thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, and twentieth assignments of error, attacking the findings of the jury as being unsupported by the evidence, have been carefully examined in all these matters, and we have concluded that the issues covered by the questions were disputed questions of fact, and were properly submitted in proper form, and therefore these assignments are overruled.

The twenty-first and twenty-second assignments or error assail the findings of the jury as being unsupported by the evidence, and have been carefully examined. These were issuable facts and properly submitted. These assignments are overruled.

[13] By the twenty-third assignment of error the trial court is charged with error in failing and refusing to instruct the jury as requested by them in special instruction No. 2, as follows:

"You are instructed, when the servant enters upon the duty of any employment involving risk of life or limb, it is his duty to inform himself of the danger to which he is exposed. He must not wait to be told, but must act affirmatively. He must take ordinary care to learn the dangers which are liable to beset him in his services."

The court's charge on assumed risk covered in substance the above requested instruction, and this assignment of error is overruled.

By the twenty-fourth assignment of error, the trial court is charged with error in having failed and refused to instruct the jury as follows:

"You will find the following issue of fact: Was the fact that the ladder was not attached to the fuel tank as open and obvious to the plaintiff, in the course of his duties during the 13 days of his employment, and having the age and experience he had, as it was to the defendants, or to the agents of defendants in charge of said work?"

The question submitted to the jury by the court on this issue was as follows:

"Was the fact that the ladder was not attached to the fuel tank open and obvious to one possessing ordinary senses, and having the age and experience as you may find from the evidence plaintiff had in performing the duties plaintiff was performing during the 13 days of his employment."

The court submitted under the above appropriate question the issue as to whether or not the defect in the ladder was open and obvious to the plaintiff, and the jury answered this question, "No," therefore, if the defect was not obvious at all to the plaintiff, and the master knew that the ladder was unfastened, there is no ground upon which to predicate a comparative degree of knowledge affecting such matters. In this case the master answered that he had actual knowledge of the defect. The assignment is overruled.

[14] By the twenty-fifth assignment the verdict of the jury and the judgment of the court is complained of as being excessive, and showing passion and prejudice and bias and an unconscionable disregard of the evidence, for the reason that, it is claimed, the injury sustained by the plaintiff does not warrant the amount of the judgment rendered against them.

The evidence is somewhat conflicting with reference to the extent of the injury, but there is nothing in the record which would lead us to the conclusion that there was any prejudice or bias or disregard of the proven facts, and, as some of the witnesses have

stated that the plaintiff's injury amounted practically to a loss of his leg or foot, we are not in a position to say that there is not evidence in the record justifying the damages assessed by the jury.

The charge of the trial court was a fair presentation of every issue made by the facts in the case, and appellants themselves asked that the case be submitted on special issues. We do not feel that we can disregard, in the light of this record, the verdict of the jury, and there is no error shown to have been committed by the trial court, warranting a reversal of the case, and it will be in all things affirmed.

It is so ordered.